**WIRTH et al. v. CORNING, Superintendent of Schools.**

**Civil Action No. 423–48.**

District Court of the United States for the District of Columbia.

Feb. 18, 1948.

M. J. Keane, Jr., of Washington, D. C., for plaintiffs.

Vernon E. West, Corp. Counsel, and Oliver Gasch and Milton D. Korman, Asst. Corp. Counsels, all of Washington, D. C., for defendant.

LETTS, Justice.

The adult plaintiffs are residents of the State of Maryland and were and now are employed officially or otherwise in the District of Columbia; they bring this action for themselves and in behalf of their minor children, who reside with their parents. The defendant is the Superintendent of Schools in the District of Columbia and has supervision in all matters relating to the education of children entitled to the benefits of the public school system of the District of Columbia.

It appears without dispute that each of the minor plaintiffs had, on or before July 25, 1947, applied for enrollment as a pupil in the Woodrow Wilson High School, an institution under the supervision of the defendant; that each of such minor plaintiffs entered said High School at the opening of the Fall term in September, 1942, and has since been in constant attendance at the classes to which assigned.

Title XXXI, § 303, District of Columbia Code 1940, provides as follows:

"All pupils whose parents are employed officially or otherwise in the District of Columbia shall be admitted and taught free of charge in the schools of said District."

As of January 27, 1948 the defendant by letters addressed to the parents required the withdrawal of the minor plaintiffs as students in the school as of January 30, 1948, the mid-year period, unless provision be made for the payment of tuition fees for the forthcoming mid-term to commence on February 2, 1948.

The defendant agrees that the minor plaintiffs would be taught free of charge had not Congress withdrawn from them the right and privilege which plaintiffs assert. He says that unless the tuition bills are paid there is no alternative but to drop the minor plaintiffs from the rolls of the school. In justification of this stand he points to a proviso of the District of Columbia Appropriation Act for the fiscal year ending June 30, 1948, approved July 25, 1947, 61 Stat. 433, which provides in part as follows:

"No part of the appropriations herein made for the public schools of the District of Columbia shall be used for the free instruction of pupils who dwell outside the District of Columbia: Provided, That this limitation shall not apply to pupils who are enrolled in the schools of the District of Columbia on the date of the approval of this Act."

What has been said presents in clear relief the sole question for determination in the case, i. e., were the minor plaintiffs en-

rolled as pupils in the Woodrow Wilson High School on or before July 25, 1947, when the appropriation act was approved.

The answer to this question lies in a proper conception of what occurred. The mother of the minor plaintiff, William Lloyd Pogue, avers that on May 15, 1947, she endeavored to enroll her son in the Woodrow Wilson High School; that she was told that her son could not be enrolled until he could present a certificate of graduation from his Junior High School; that on June 19, 1947, her son graduated from his Junior High School and that within a few days proof of such graduation and of her son's credits were delivered to the enrollment officer of the Woodrow Wilson High School; that on June 23, 1947, she took her son for a conference with such enrollment officer; that on that occasion the enrollment officer examined the accredited status of her son; that a large questionnaire was produced and matters of curricular and extra-curricular activities were fully discussed, much of which as data and information was recorded on the form-questionnaire; that a final decision of appropriate courses of study was reached and was recorded by the enrollment official; that thereafter the representative of the school produced a large book and entered therein, under her son's name, much of the information gleaned from her and her son in the conference, the courses of study agreed upon, vital statistics, the address and various means of identification. Without further ado young Pogue was permitted to enter the school on the opening day of the Fall term.

The defendant caused two letters to be mailed to the parents of each of the minor plaintiffs, they read as follows:

"August 29, 1947

"Concerning the new law relative to the attendance of District of Columbia Public Schools by non-residents, the following is quoted from Superintendent's Circular #8:

"The effect of this opinion (of the Corporation Counsel) is as follows: Students who attended the public schools of the District of Columbia during the last school year or who on or before July 25, 1947, were enrolled to attend such schools beginning in September, 1947, may attend the District public schools this year without payment of tuition provided that they were entitled to receive free tuition under the existing law before July 25, 1947."

"According to our records, your child enrolled in this school on June 20, 1947."

"September 22, 1947

"On September 19, 1947, we were instructed by the Superintendent to furnish you with the following information:

"Your child, ———, is being enrolled with the understanding that the decision as to whether or not tuition payments will be required has not been reached, and that the enrollment of your child is subject to the provision in the District of Columbia Appropriations Act for the fiscal year 1948 requiring tuition payments by certain non-resident pupils."

It appears from the affidavit of Mr. Norman J. Nelson, First Assistant Superintendent of Schools of the District of Columbia, that at the time of registration each of the minor plaintiffs was required to furnish information upon a questionnaire. It is believed that the information so required was similar to that furnished in behalf of the minor plaintiff Pogue. It further appears from said affidavit that neither the Board of Education nor administrative officers of the Public School System had established any rule concerning the time when registration for admittance in the school system should be accepted and that there was considerable variance in the methods which were employed by the principals and other officials of the various schools in the District; that Woodrow Wilson High School accepted registrations from prospective new pupils from the early part of June, 1947 and on through the summer; and that many of the schools did not accept registration of prospective students during the summer for the Fall term.

There resulted from this variance in practice respecting registration of new pupils a seeming discrimination against other children of nearby Maryland and Virginia who endeavored to enroll in various schools of the District in the summer of 1947 and who failed of registration because of such variance in the practices prevailing in the several schools; but it was not a discrimi-

nation in the law. If Congress had said that no part of the moneys appropriated shall be available for the free instruction of red headed boys a discrimination in the law would be readily apparent. Here, however, the limitation was as to all children who reside outside of the District. Free instruction of children residing outside of the District as provided in Title XXXI, § 303 of the District of Columbia Code is a gratuity and all legal rights flowing from the enactment are subject to the will of Congress. Congress may withdraw the privilege of free instruction at any time or may at its will place limitations upon it. The proviso in the District of Columbia Appropriation Act with which we are here concerned clearly expresses the will of Congress. The legislative history of the Act indicates that the Congress did not wish to unduly interrupt the educational programs of children enrolled in the schools of the District. It is clear that it intended to withdraw the privilege of free instruction for the fiscal year and this was accomplished by the limitation found in the proviso of the Act. It is well known, and Congress knew, that parents plan for the education of their children often for a long time. The immediate objective, thought to be consistent with a policy of economy, was to withdraw the privilege of free instruction in a manner which would not seriously interrupt the educational plans of parents. It seemed necessary to fix a dead line; accordingly it was provided that no part of the appropriations for the public schools of the District of Columbia shall be used for the free instruction of pupils who dwell outside of the District and who were not enrolled on the date of the approval of the Act.

If there is serious question as to the intention of Congress in using the word "enrolled" it is believed that the word was employed in its usual and ordinary sense. The same meaning would have been conveyed if Congress had used the word registered. It is considered that Congress used the word "pupils" in its ordinary sense and to relate to children of school age desiring the instruction available in the schools of the District. It is not likely that Congress used the word "pupils" in a restricted sense intended to apply to children of school age actually receiving class instruction. It seems reasonable that Congress in using the word "pupils" intended the meaning ascribed to it by the defendant in his letter of August 29, 1947, addressed to the parents of the several minor plaintiffs wherein he refers to students who attended the District schools during the last school year or who on or before July 25, 1947 were enrolled to attend such schools beginning in September.

Defendant's motion to dismiss is overruled.

The motion of plaintiffs for a preliminary injunction is sustained.