NEW YORK CENTRAL RAILROAD COMPANY *v.* JOHNSON, ADMINISTRATRIX, ETC.

[No. 29,246. Filed July 6, 1955.]

458

*Marvin A. Jersild,* of Chicago, Illinois, and *Crumpacker & Schroer,* of Hammond, for appellant.

*J. M. Ruberto* and *James Chester,* of Gary, for appellee.

EMMERT, C. J.—This appeal reaches us by transfer from the Appellate Court for failure of four judges to agree, under §4-209, Burns' 1946 Replacement.

This is an appeal from a judgment on a verdict for the appellee in the sum of $8,500 for the wrongful death of appellee's decedent, who was her adult daughter. The complaint charged and the evidence disclosed that on the evening of November 27, 1949, at about 8:30 o'clock, appellee's decedent had purchased a ticket from Gary to Detroit, Michigan, and was standing on the platform of appellant waiting to board a train to Detroit. Before she could do so, another train of appellant came into the station from the east enroute to Chicago, and was operated at such a high speed that

four of the passengers waiting to board the Detroit train were caught by the suction of the west bound train, and drawn into it so that three were killed outright, and another seriously injured. Appellant admitted the negligence as charged, and that such negligence was a proximate cause of decedent's death. The assignment of errors charges the trial court erred in overruling appellant's motion for a new trial. The issues presented here concern appellee's right to recover damages and the amount thereof.

The evidence, when viewed most favorable to the appellee, discloses that appellee, Mary Johnson, was a housewife, residing at 2616 Madison Street, Gary, Indiana. Ruby Green was her daughter, born June 15, 1920. Ruby Green was in the last year of high school when she quit and went to work. In 1936 she was married to one Alonzo Malone, from whom she was divorced October 24, 1946, with restoration of her maiden name provided by the decree. At the time of her death the daughter was 29 years of age and had been in good health for some time. For 27 out of the 29 years of her life she had lived with her mother in her mother's home.

The mother had been divorced from her first husband, who was the father of the daughter, and September 9, 1932, the mother married Will Johnson, who was living with the mother at the time of her daughter's death.

Since 1938 the daughter had lived at home with the mother. The daughter, when she was 16 years of age, began working as a waitress, and later did housework and laundry work. In 1937 she gave her mother $4.00 or $5.00 every week, which the mother used in the home to buy groceries, fuel, insurance and pay the utility bills. In 1939 the daughter worked at Slick's Laundry,

during which time she gave her mother $6.00 every week, which the mother used to buy groceries and clothes for herself "because my husband was not making enough to support" her. Thereafter the daughter started working at the Kingsbury Ordnance Plant, where she earned $30.00 a week, of which she gave $20.00 to $25.00 each week to the mother. The mother used this to pay household bills and bought some clothing for herself.

In 1944 the daughter went to work as a second cook and chef with the Pennsylvania Railroad, for which she was paid every two weeks, and of this pay she gave to her mother $30.00 to $35.00 every two weeks. The mother used this to "pay bills and buy groceries, and pay utility bills and buy fuel for the house, and everything."

In 1946 the daughter went to work for the Glowlite Company in Chicago, during which time she was paid every two weeks, and each pay time she would give her mother $25.00.

In 1949 the daughter left the Glowlite Company and went to work as a bookkeeper for a Mr. Williams, during which time she gave her mother $15.00 a week. In 1949 there was a steel strike coming in Gary, and by reason thereof she was unemployed. Mr. Johnson was also unemployed during the strike, and the daughter then in September went to Detroit to secure employment where she was working at the time of her death. She wrote her mother every week and in each letter she would send money to her mother.

The mother was the housekeeper for the home, and from January 31, 1945, to December 21, 1949, Mr. Johnson earned an average weekly take-home wage of $36.22 or approximately $156.00 per month. In 1947 the mother and the husband purchased a home on a

contract which provided for $800.00 down payment, of which the daughter paid $300.00. Thereafter the home was improved by having siding put on it, and a new kitchen and bath constructed which brought the total payments per month up to $130.80. After the daughter's death the mother had to refinance the home to reduce the payments to $31.25 a month. After Ruby's death the mother was compelled to borrow $150.00 from her sister to make the payments on the house and she borrowed $400.00 from the sister to apply on the burial expenses, which were in the total sum of $620.00 which the mother paid, $300.00 from an insurance policy, and the $400.00 borrowed from her sister.

The daughter paid no board and room but helped around the house and accompanied her mother to church on Sundays. In 1942 the mother was in the hospital for an operation, and the daughter paid the $150.00 doctor bill. In 1943 the mother was again in the hospital for an operation, and the daughter paid $50.00 of this expense. The daughter gave her mother the money for the purchase of household furnishings and equipment at various times. There is no evidence that the daughter was contemplating marriage at the time of her death. During the time of her mother's illness she nursed her back to health. The daughter's expectancy at the time of her death was 36.03 years and her mother, who was 45 years of age, had the expectancy of 24.54 years. At the time of her daughter's death, Will Johnson's health was "not so good now" with some trouble with his stomach, back and his heart, for which he was being medically treated by a Dr. Goldstone, of Gary, although he was able to work at the Carnegie-Illinois Steel Company.

Appellant contends that the evidence fails to disclose that appellee is a dependent next of kin under the

Wrongful Death statute, §2-404, Burns' 1946 ■ Replacement (Supp.). Under the common law there was no legal obligation upon an adult child to support its parent. *Haskamp* v. *Swenger* (1926), 85 Ind. App. 255, 257, 153 N. E. 815.[1]

· "In a case of this kind the extent of the compensation is largely a jury question and does not admit of fixed rules and mathematical precision. As was said in *Consolidated Stone Co.* v. *Staggs, supra* [(1905), 164 Ind. 331, 73 N. E. 695]:

"'Although a mist seems to hang over the cases when a concrete application of a rule of damages is sought, yet this uncertainty exists because the extent of the compensation is so largely a jury question. It was said in *Railroad* v. *Spence* (1893), 93 Tenn. 173, 189, 23 S. W. 211, 42 Am. St. 907: "The assessment of damages in actions of this character does not admit of fixed rules and mathematical precision, but is a matter left to the sound discretion of the jury. The courts refuse to lay down any cast-iron rules or mathematical formula by which such damages are to be ciphered out by juries." It is proper to direct the minds of the jury to the various pertinent facts which the evidence may show as circumstances which may be considered in determining the question of compensation but to suggest a method of computation could scarcely be competent in any case, and to instruct that such a method should be pursued would be an invasion of the province of that body. The jury should be confined to compensation for pecuniary loss, but, within the range of the evidence which may justly be said to bear on that subject, the

---

1. Under Ch. 82 of the 1947 Acts a legal civil duty was created upon children over twenty-one years of age who had been supported by their parents until sixteen, if a male, or seventeen, if a female, to contribute to the support of parents if the parent be financially unable to furnish himself with necessary food, clothing, shelter and medical attention. This was enacted to close the gap created by §10-1410, Burns' 1942 Replacement, which made it a crime for children to fail to support their parents. See *Haskamp* v. *Swenger* (1926), 85 Ind. App. 255, 257, 153 N. E. 815, for construction of this Act.

question of damages is essentially a question of fact.' "

*Henschen* v. *New York Cent. R. Co.* (1945), 223 Ind. 393, 400, 60 N. E. 2d 738. See also *Northern Indiana Power Co.* v. *West, Admx.* (1941), 218 Ind. 321, 327, 32 N. E. 2d 713.

It is not necessary for the decedent to have been under a legal obligation to support the next of kin, but it may be of weight in determining the amount of pecuniary loss. *Diebold, Adm.* v. *Sharp* (1898), 19 Ind. App. 474, 478, 49 N. E. 837. The evidence in this case was of sufficient weight on damages that the jury would have been justified in finding that the daughter was under a legal civil duty under the statute to contribute to the support of her mother but the effect of the statute has not been argued in the briefs, and it is not necessary to base our decision thereon. See *Louisville, New Albany & Chicago Ry. Co.* v. *Wright, Admr.* (1893), 134 Ind. 509, 34 N. E. 314.[2]

Appellant contends that in the 1937 amendment to the Wrongful Death Act of 1933, the addition of the words "or dependent next of kin," restricted the right to recovery by a parent for the death of an adult child. Generally an amendment of an act which changes the language of a prior act does indicate a legislative intention that the meaning be changed. However, we are of the opinion that this change in the Wrongful Death Act no more than declared what our prior decisions had been on the right to recovery under such circumstances. The statute

---

2. "As the pecuniary loss in cases where the deceased left no widow or children must, of necessity, depend upon the particular circumstances surrounding each case, it would be difficult, if not impossible, to lay down any general rule applicable to all cases." *Louisville, New Albany and Chicago Ry. Co.* v. *Wright, Admr.* (1893), 134 Ind. 509, 514, 34 N. E. 314.

does not require that the next of kin be totally dependent, and we have no right to judicially legislate by reading such words into the act. Under the evidence most favorable to the appellee, the mother had sustained a pecuniary loss for which our Wrongful Death Act granted a right of action. However, it should be noted proof of dependency must show a need or necessity for support on the part of the person alleged to be a dependent, the mother in this case, coupled with the contribution to such support by the deceased. Payments for board, lodging or other accommodations, mere gifts, donations or acts of generosity by children to parents standing alone are not sufficient to establish dependency on the part of the recipient.

We have examined appellee's Instructions Number 5 and Number 7 which were given to the jury and they fully complied with the rules on damages as set forth in the above cited opinions. There was no error in giving each.

Specifications 8, 9, 10, 11 and 12 concerned the court's ruling on the admission of evidence. Appellant's brief fails to cite any authority to sustain his position. The case of *Eviston* v. *Bradford* (1935), 100 Ind. App. 616, 197 N. E. 724, to the effect that "making payments on the mortgage, taxes, and insurance" plus the purchase of some clothing and some groceries for the table did not prove dependency under the Workmen's Compensation Act, is not in conflict with our decision in the appeal at bar. The effect of this authority in a workmen's compensation case has been seriously weakened by the decision in *Parke County Rural Elect. Memb. Corp.* v. *Goodin* (1942), 112 Ind. App. 216, 220, 44 N. E. 2d 198, and *Blue Ribbon Pie Kitchens* v. *Long* (1952), 230 Ind. 257, 261, 103 N. E. 2d 205, wherein this court said:

"Dependency, as used in the Workmen's Compensation Act is not restricted to the payment of a sum sufficient to provide dependents with the bare necessities of life, but may include keeping the family and home in a condition and with surroundings suitable to their station in life."

Appellant also contends the verdict was excessive and therefore should be reversed. It must be remembered that the jury as well as this court is aware of the general inflation and depreciated and the cheapened value of money.

"After examining the evidence concerning the injuries to the plaintiff, we cannot say that the amount of damages assessed by the jury was so large as to indicate that the jury in assessing the amount was motivated by prejudice, passion, partiality or corruption, or considered some improper element. *Citizens Tel. Co.* v. *Prickett* (1919), 189 Ind. 141, 125 N. E. 193." *Jones* v. *Cary* (1941), 219 Ind. 268, 287, 37 N. E. 2d 944. "In order to justify us in reversing the judgment on such ground, the amount of damages assessed must appear to be so outrageous as to impress the court at 'first blush' with its enormity. *Louisville, etc., R. Co.* v. *Kemper* (1899), 153 Ind. 618, 53 N. E. 931." *Hines, Director* v. *Nichols, Admr.* (1921), 76 Ind. App. 445, 453, 454, 130 N. E. 140.

There was no error in overruling appellant's motion for a new trial.

Judgment affirmed.

Bobbbitt, Landis and Arterburn, JJ., concur.

Achor, J., not participating.

NOTE.—Reported in 127 N. E. 2d 603.