**ELMER BUCHTA TRUCKING, INC., Appellant–Defendant,**

**v.**

**Christina STANLEY and Larry Stanley as Co–Personal Representatives of the Estate of Michael G. Stanley, Deceased, Appellees–Plaintiffs.**

No. 14A01–9805–CV–164.

Court of Appeals of Indiana.

July 16, 1999.

Robert F. Wagner, Dina M. Cox, Lewis & Wagner, Indianapolis; D. Timothy Born, Shawn M. Sullivan, Terrell, Baugh, Salmon & Born, Evansville, for appellant.

John B. Drummy, Eric D. Johnson, Kightlinger & Gray, Indianapolis, amicus curiae.

James D. Johnson, Rudolph, Fine, Porter & Johnson, LLP, Evansville, amicus curiae for Defense Trial Counsel of Indiana.

F. Wesley Bowers, Bowers, Harrison, Kent & Miller, Evansville, amicus curiae.

James R. Fisher, Debra H. Miller, Ice Miller Donadio & Ryan, Indianapolis, for appellees.

William F. Conour, Conour Doehrman, Indianapolis, amicus curiae for Indiana Trial Lawyers Association.

## OPINION

STATON, Judge

Elmer Buchta Trucking, Inc. ("Buchta") appeals a judgment in favor of Christina Stanley and Larry Stanley as co-personal representatives of the Estate of Michael G. Stanley, deceased. Buchta raises two issues on appeal, which we restate as:

I. Whether the trial court erred by excluding evidence of the portion of Michael's lost earnings that he would have consumed for his personal maintenance.

II. Whether the trial court abused its discretion by refusing two of Buchta's tendered jury instructions.

We affirm.[1]

Michael died as a result of injuries he sustained during a collision between his vehicle and a truck driven by an agent of Buchta. The co-representatives of Michael's estate brought a wrongful death action against Buchta. Buchta admitted liability, and the case proceeded to trial on the issue of damages. The jury returned a verdict of $6,243,-189.00, upon which the trial court entered judgment against Buchta. This appeal ensued.

### I.

*Personal Maintenance Evidence*

■ Buchta contends that the trial court erred by excluding evidence regarding the portion of Michael's lost earnings that Michael would have consumed for his personal maintenance. Buchta sought to introduce this "personal maintenance" evidence in order to reduce the damage award by proving that a portion of Michael's lost earnings would have been unavailable to his family even if he had lived to his expected age. The trial court granted the Stanleys' motion in limine to exclude such evidence. Buchta preserved the issue for appeal by making an offer to prove at trial in which an expert testified that Michael would have consumed approximately twenty-four percent of his lifetime earnings for his personal maintenance.[2]

■ Initially, we note our standard of review. We will reverse a trial court's deci-

---

1. The Stanleys' request for oral argument is denied.

2. The Stanleys contend that Buchta has waived its argument regarding the admissibility of personal maintenance evidence by failing to object to a preliminary instruction on the measure of damages. We do not agree. Generally, an offer to prove is sufficient to preserve an error for appeal when a motion in limine has been granted. *Conway v. Evans,* 549 N.E.2d 1092, 1094 (Ind.Ct.App.1990); *see also* Ind. Evidence Rule 103(a)(2). Buchta made an adequate offer to prove. We reject the Stanleys' contention that a preliminary instruction regarding damages established the law of the case as precluding the use of personal maintenance evidence.

sion to admit or exclude evidence only for an abuse of discretion. *Paullus v. Yarnelle*, 633 N.E.2d 304, 307 (Ind.Ct.App.1994), *reh. denied, trans. denied.* An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *McCullough v. Archbold Ladder Co.*, 605 N.E.2d 175, 180 (Ind.1993).

Buchta contends that the trial court abused its discretion by misinterpreting Indiana's Wrongful Death Act ("the Act"). Buchta argues that the Act requires that damages based upon a decedent's lost earnings be reduced by personal maintenance expenses. Buchta concludes that the trial court must admit personal maintenance evidence, and that failure to do so is an abuse of discretion. On the other hand, the Stanleys contend that the Act requires the full amount of a decedent's lost earnings be included in a damage award. Thus, the Stanleys argue that personal maintenance evidence is never admissible in a wrongful death action, and the trial court lacks discretion to admit such evidence.

▆▆▆▆ Wrongful death actions in Indiana are based entirely upon statute. *Ed Wiersma Trucking Co. v. Pfaff*, 643 N.E.2d 909, 911 (Ind.Ct.App.1994), *adopted on transfer*, 678 N.E.2d 110 (Ind.1997); *see* IND.CODE § 34–1–1–2 (1993)[3]; IND.CODE § 34–1–1–8 (1993)[4] (child wrongful death act). Legislative authorization is necessary because at common law there was no liability in tort for killing another. *Ed Wiersma*, 643 N.E.2d at 911. Because actions for wrongful death are in derogation of the common law, they are

strictly construed. *Southlake Limousine and Coach, Inc. v. Brock*, 578 N.E.2d 677, 679 (Ind.Ct.App.1991), *trans. denied.* Moreover, only those damages prescribed by the wrongful death statute may be recovered. *Ed Wiersma*, 643 N.E.2d at 911; *Southlake Limousine*, 578 N.E.2d at 679.

Since 1965, the damage provision of the wrongful death act has provided, in relevant part, as follows:

> When the death of one is caused by the wrongful act or omission of another, ... the damages shall be in such an amount as may be determined by the court or jury, including, but not limited to, reasonable medical, hospital, funeral and burial expenses, and lost earnings of such deceased person resulting from said wrongful act or omission.

IC 34–1–1–2; *see* 1965 Ind. Acts 305, ch. 174, § 1. Prior to 1965, the Act made no mention of lost earnings. *See* 1957 Ind. Acts 43–44, ch. 25, § 1. Nevertheless, the Indiana Supreme Court had long interpreted the damage provision of the Act to permit recovery for a decedent's lost earnings. *Pittsburg, C.C. & St. L. Ry. Co. v. Burton*, 139 Ind. 357, 37 N.E. 150, 156 (1894), *reh. denied*, 139 Ind. 357, 38 N.E. 594 (1894). However, the supreme court had also required that those damages be reduced by the decedent's personal maintenance expenses. *Burton*, 37 N.E. at 156. Since the 1965 amendment adding the language regarding lost earnings, Indiana's appellate courts have not addressed whether trial courts are required to admit or exclude evidence of personal maintenance expenses pursuant to this provision.[5] Buchta

---

**3.** The wrongful death act has recently been recodified at IND.CODE § 34–23–1–1 (1998).

**4.** The child wrongful death act has recently been recodified at IND.CODE § 34–23–2–1 (1998).

**5.** Buchta argues that the Indiana Supreme Court has approved of the use of personal maintenance evidence since the 1965 amendment. In *Burnett v. State*, 467 N.E.2d 664 (Ind.1984), the supreme court considered the adequacy of a damage award in a wrongful death case. The plaintiff, as the administratrix of her husband's estate, had been awarded $6,000 in damages, and she appealed contending that the damages were inadequate. On transfer, the supreme court held that

the plaintiff had failed to carry her burden to prove damages resulting from her husband's lost earnings. *Id.* at 665–66. The court stated: "In the case at bar, for the purpose of providing a basis for a jury assessment of lost earnings, plaintiff introduced income figures, but did not satisfy the jury's need to know how to translate those amounts into an approximation of the actual monetary loss she suffered by reason of Robert's death. She did not indicate, for example, by how much these figures should be reduced to account for Robert's personal and business expenses." *Id.* at 666. These statements by our supreme court do suggest that the court believed personal maintenance evidence relevant in determining wrongful death damages. Nevertheless,

contends that the General Assembly's inclusion of the lost earnings language did not affect the pre–1965 interpretations of the Act. In support of its argument, Buchta refers to the Act's underlying policy and purpose and to various rules of statutory construction. Before looking to these matters, however, we must first examine the plain language of the Act.

■ Our primary goal in construing a statute is to determine and effectuate the General Assembly's intent. *Sullivan v. Day*, 681 N.E.2d 713, 717 (Ind.1997); *Smith v. State*, 675 N.E.2d 693, 696 (Ind.1996). However, "[j]udicial construction of a statute is inappropriate where a statute is clear and unambiguous." *Amoco Prod. Co. v. Laird*, 622 N.E.2d 912, 915 (Ind.1993). Therefore, we need only look to other rules of statutory construction where the Act's plain language is ambiguous. A statute is ambiguous where it is susceptible to more than one interpretation. *Id.*

■ Buchta contends that the damage provision of the Act as it relates to lost earnings is ambiguous. The Stanleys contend that the damage provision is unambiguous and that the plain language of the act mandates that a wrongful death plaintiff recover the entire amount of a decedent's lost earnings without an offset for personal maintenance. We agree with the Stanleys.

The Act provides in relevant part: "... the damages shall be in such an amount as may be determined by the court or jury, including, but not limited to, ... lost earnings of such deceased person...." IC 34–1–1–2. As Buchta observes, this statute vests the fact-finder with the discretion to determine the amount of the wrongful death damages. However, contrary to Buchta's contention, the statute also specifies, in part, the manner by which these damages are to be determined. The phrase "including, but not limited to, ... lost earnings of such deceased person" refers to and describes the subject of the sentence—"damages." Thus, the statute specifies that wrongful death damages include the decedent's lost earnings. There is nothing ambiguous about this requirement. Although the fact-finder retains the discretion to weigh the evidence and determine the amount of lost earnings, the fact-finder lacks discretion to omit any of the decedent's lost earnings from the damage award.

Furthermore, the meaning of "lost earnings of such deceased person" is not ambiguous. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1970) defines "lost" as "not made use of: WASTED" or "not claimed: FORFEITED." *Id.* at 1338. A decedent's "lost" earnings are those earnings a decedent has been denied as a result of his or her untimely death.

BLACK'S LAW DICTIONARY (6th ed.1990) defines "earnings" as:

Income. That which is earned; *i.e.*, money earned from performance of labor, services, sale of goods, etc. Revenue earned by an individual or business. Earnings generally include but are not limited to: salaries and wages, interest and dividends, and income from self-employment. Term is broader in meaning than "wages."

*Id.* at 509. WEBSTER'S defines "earnings" as: "a: something (as wages or dividends) earned as compensation for labor or the use of capital ... b: the balance of revenue for a specific period that remains after deducting related costs and expenses incurred...." *Id.* at 714. To the extent that these definitions contemplate expenses, it is business expenses, and not personal expenses, that are relevant. BLACK'S uses the term "income" to define "earnings." In turn, "income" is defined as: "The return in money from one's business, labor or capital invested; gains, profits, salary, wages, etc...." BLACK'S at 763. Personal expenses are not pertinent in determining the return in money from a person's business ventures. The WEBSTER'S definition refers to the costs and expenses that are incurred in the production

the supreme court did not directly confront the issue presented by this case. In *Burnett*, the supreme court decided the adequacy of a wrongful death damage award, not the admissibility of personal maintenance evidence. The supreme court did not consider the meaning of IC 34–1– 1–2 and the 1965 amendments thereto. Unlike the supreme court in *Burnett*, we are asked to determine the precise meaning of the wrongful death statute as it pertains to damages based upon lost earnings. *Burnett* is not binding precedent on this point of law.

of revenue. Again, personal expenses are not incurred in connection with producing revenue. Personal expenses are not pertinent to the calculation of a decedent's lost earnings.

Because the plain language of the Act requires a court or jury to include a decedent's lost earnings in the wrongful death damage award, it necessarily precludes the fact-finder from awarding less than the full amount of a decedent's lost earnings. Evidence that a decedent would have consumed a portion of his lost earnings for his personal maintenance must be excluded in a wrongful death action because this evidence would encourage the fact-finder to award less than the full amount of the decedent's lost earnings. Accordingly, we hold that the trial court did not err by excluding evidence of Michael's personal maintenance expenses.[6]

## II.

### Instructions

Buchta contends that the trial court abused its discretion by refusing two of its tendered jury instructions. The giving of jury instructions is a matter within the sound discretion of the trial court, and we review the court's refusal to give a tendered instruction for an abuse of that discretion. *CSX Transp., Inc. v. Kirby*, 687 N.E.2d 611, 616 (Ind.Ct.App.1997). Generally, we will reverse a trial court for failure to give a tendered instruction if: 1) the instruction is a correct statement of the law; 2) it is supported by the evidence; 3) it does not repeat material adequately covered by other instructions; and 4) the substantial rights of the tendering party would be prejudiced by failure to give it. *Id.* at 616–17. However, it is not error for the trial court to refuse to give a negative instruction when the jury has been properly instructed on the positive aspects of the same issue. *Dayton Walther Corp. v. Caldwell*, 180 Ind.App. 539, 389 N.E.2d 723, 729 (1979), *aff'd in part*, 273 Ind. 191, 402 N.E.2d 1252, 1253 (1980).

Buchta tendered the following instructions, which the trial court refused:

### Instruction No. 6

It is not the purpose of this proceeding to punish Elmer Buchta Trucking, Inc. for

---

6. We note that even if we deemed the language of the damage provision ambiguous, we would conclude that the General Assembly intended that the full amount of a decedent's lost earnings be included as damages without an offset for personal maintenance expenses. A fundamental rule of statutory construction is that "when the legislature enacts a statutory amendment to a prior statute, a presumption arises that the legislature intended to change the law unless it clearly appears that the amendment was made only to express the original intention of the legislature more clearly." *Jones v. State*, 457 N.E.2d 231, 234 (Ind.Ct.App.1983). Under Buchta's proposed interpretation, the addition of the statutory language regarding a decedent's lost earnings in the 1965 amendment would have been meaningless since the supreme court had already construed the Act to permit damages to be awarded for a decedent's lost earnings and to require an offset for personal maintenance expenses. *See Burton*, 37 N.E. at 156. Because it does not clearly appear that the General Assembly intended to merely restate this rule, we must conclude that the legislature intended to change the law to permit recovery of the full amount of a decedent's lost earnings without an offset for personal maintenance expenses.

Furthermore, we are unpersuaded by Buchta's argument that the pecuniary purpose of the Act mandates the conclusion that personal maintenance evidence must be admitted to prevent a windfall to the wrongful death plaintiffs. It has been repeatedly stated that "[p]ecuniary loss is the foundation of a wrongful death action, and the damages are limited to the pecuniary loss suffered by those for whose benefit the action may be maintained." *Ed Wiersma*, 643 N.E.2d at 911; *see also, New York Cent. R.R. Co. v. Johnson*, 234 Ind. 457, 127 N.E.2d 603, 606 (1955); *Consolidated Stone Co. v. Staggs*, 164 Ind. 331, 73 N.E. 695, 697–98 (1905); *Andis v. Hawkins*, 489 N.E.2d 78, 82 (Ind.Ct.App.1986), *trans. denied*. This judicial construction of the Act remains as the guiding principle for construing the type of damages that may be awarded *when not specifically mandated* by the Act. *See, e.g., Ed Wiersma*, 643 N.E.2d at 911–13 (consistent with pecuniary loss rule to allow dependent next of kin to recover damages based upon emotional loss of decedent's love, care, and affection); *Estate of Kuba v. Ristow Trucking Co.*, 508 N.E.2d 1, 2 (Ind.1987) (inconsistent with pecuniary loss rule to allow wrongful death plaintiff to recover treble damages pursuant to separate statutory provision since treble damages are meant to punish the defendants, not to compensate the decedent's dependents). However, the principle is of less significance in determining the General Assembly's intent with respect to the Act's mandatory damage provisions. The General Assembly can, of course, choose to deviate from the overall pecuniary purpose of the Act when it enacts specific damage provisions as it did in the case of a decedent's lost earnings.

the death of Michael G. Stanley. Instead, the damages you award must be limited to that amount of money which is required to compensate Christina Stanley and her three children for the pecuniary loss they have sustained by reason of Michael G. Stanley's death. This loss can be determined, in part, from the assistance the decedent would have provided through money, services, or other material benefits. However, this loss also includes the loss to the children of parental training and guidance and the loss of love and affection to the surviving spouse.

Record at 401.

### Instruction No. 8

Under Indiana law, your award for damages in this wrongful death case may not include damages for grief, sorrow, or wounded feelings.

Record at 403.

■ Buchta's tendered instruction 8 is a negative instruction, and the first sentence of tendered instruction 6 is negative. In *Richmond Gas Corp. v. Reeves,* 158 Ind.App. 338, 302 N.E.2d 795 (1973), *reh. denied,* this court refused to require the trial court to give a tendered instruction that read as follows:

It is the law, however, that you are not permitted to assess what are known as punitive damages or damages in the nature of a punishment against any defendant. Nor can you include any damages whatsoever for any grief or sorrow on the part of the widow or children on account of the death of the deceased. Likewise you should not permit yourself to be influenced in any way by the size of the demand made by the plaintiffs.

*Id.* at 814. This court concluded that this instruction was unnecessary because the jury had been adequately instructed regarding the proper measure of damages. *Id.* at 814–15. The first sentence of the *Richmond* instruction is similar to the first sentence of Buchta's tendered instruction 6, and the second sentence of the *Richmond* instruction is similar to Buchta's tendered instruction 8. To the extent that the trial court was justified in refusing to give the first sentence of Buchta's tendered instruction 6, the court could refuse

the instruction in its entirety. *Cua v. Ramos,* 433 N.E.2d 745, 749 (Ind.1982) (unless a party is entitled to have an instruction given as tendered, the trial court may properly refuse it). Therefore, the trial court did not abuse its discretion in refusing both tendered instruction 6 and tendered instruction 8 to the extent that the jury was otherwise properly instructed regarding the measure of damages.

The jury was given the following positive instruction regarding the proper measure of damages.

The personal representatives of the estate are entitled to recover for the benefit of Michael Stanley's estate, the reasonable funeral and burial expenses of Michael Stanley.

The personal representatives of the estate are also entitled to recover for the benefit of Christina Stanley, Brooke, Matthew and Casey Stanley, the lost earnings of Michael Stanley resulting from his death. In determining Michael Stanley's lost earnings, you may consider his age, health and normal life expectancy, immediately before the injury causing his death, and Michael Stanley's occupation and earning capacity.

The personal representatives of the estate are also entitled to recover, for the benefit of Christina Stanley, the reasonable value of the loss of care, companionship, love and affection that Christina Stanley reasonably expected to receive from the continued life of her husband, Michael Stanley.

The personal representatives of the estate are also entitled to recover for the benefit of Brooke Stanley, the reasonable value of the loss of care, love and affection, parental training and guidance that Brooke Stanley reasonably expected to receive from the continued life of her father, Michael Stanley.

The personal representatives of the estate are also entitled to recover for the benefit of Matthew Stanley, the reasonable value of the loss of care, love and affection, parental training and guidance that Matthew Stanley reasonably expected to re-

ceive from the continued life of his father, Michael Stanley.

Finally, the personal representatives of the estate are also entitled to recover for the benefit of Casey Stanley, the reasonable value of the loss of care, love and affection, parental training and guidance that Casey Stanley reasonably expected to receive from the continued life of her father, Michael Stanley.

At the time of his death, Michael Stanley was 32 years old and had a life expectancy of an additional 41 years, which would be to age 73.

Record at 406–07.

This and other instructions adequately informed the jury regarding the proper measure of damages in this case. In particular, this instruction informed the jury of the types of injury for which the plaintiffs could be compensated. Although positive, the instruction was specific enough in describing the type of damages that could be compensated to negate any inclination the jury might have had to award damages based upon improper considerations, such as to punish Buchta or to award damages for the Stanleys' grief.

Buchta notes the absence of any instruction to the jury that they were to limit compensation to the plaintiffs' "pecuniary" loss. Indeed, it has been stated that "[p]ecuniary loss is the foundation of a wrongful death action, and the damages are limited to the pecuniary loss suffered by those for whose benefit the action may be maintained." *Ed Wiersma,* 643 N.E.2d at 911. Nevertheless, nothing requires that the term "pecuniary" be used in wrongful death instructions. Here, the jury was instructed that damages were limited to the "reasonable value" of the loss of care, companionship, love and affection Michael provided to Christina and the "reasonable value" of the loss of care, love and affection, parental training and guidance that Michael provided to Brooke, Matthew, and Casey. This instruction was sufficient to prevent the jury from awarding the plaintiffs damages in excess of their pecuniary loss, except where permitted by the Act as in the case of damages for lost earnings. The trial court did not abuse its discretion in refusing Buchta's tendered instructions 6 and 8.

Affirmed.

RILEY, J., and BROOK, J., concur.