ELMER BUCHTA TRUCKING, INC.,
Appellant (Defendant Below),

v.

Christina STANLEY and Larry Stanley
as Co–Personal Representatives of the
Estate of Michael G. Stanley, Appel-
lees (Plaintiffs Below).

No. 14S01–0002–CV–114.

Supreme Court of Indiana.

March 26, 2001.

Robert F. Wagner, Dina M. Cox, Indianapolis, IN, D. Timothy Born, Shawn M. Sullivan, Evansville, IN, Attorneys for Appellant.

John B. Drummy, Eric D. Johnson, Indianapolis, IN, James D. Johnson, Evansville, IN, Attorneys for Amicus Curiae Defense Trial Counsel of Indiana.

F. Wesley Bowers, Evansville, IN, Attorney for Amicus Curiae.

James R. Fisher, Debra H. Miller, Indianapolis, IN, Attorneys for Appellee.

William F. Conour, Indianapolis, IN, Attorney for Amicus Curiae Indiana Trial Lawyers Association.

ON PETITION TO TRANSFER

SHEPARD, Chief Justice.

Under Indiana's wrongful death statute, a decedent's estate may recover damages for the lost earnings of the deceased, among other things. This has long been understood not to include that portion of decedent's earnings that the decedent himself would have consumed for his own personal expenses and maintenance. The question here is whether the legislature

changed that rule in 1965. We conclude it did not.

### Facts and Procedural History

In July 1996, Michael Stanley was fatally injured during a vehicular collision with Luther Leslie, an employee of Elmer Buchta Trucking, Inc. ("Buchta"). Stanley's wife and three children survived him.

In December 1996, Stanley's estate ("Stanley") filed suit against Leslie's estate ("Leslie") and Buchta. Buchta and Leslie admitted liability, acknowledging that Leslie's negligence caused Stanley's death and that Buchta was vicariously liable for damages recoverable under the wrongful death statute. Stanley then dismissed the suit against Leslie and proceeded to trial against Buchta on the issue of damages.

Before trial, Stanley filed two motions in limine seeking to exclude evidence about the amount of Michael Stanley's anticipated earnings that Stanley himself would have consumed had he lived. The trial court granted the motions.

At trial, Stanley called economist George Launey to testify about the amount of lost earnings Stanley's estate suffered because of his death. Before Launey testified, Buchta made an offer to prove regarding the amount of Stanley's earnings that he would have consumed for personal expenses or maintenance throughout his life. The offer to prove revealed that had Launey been allowed to do so, he would have said the amount of lost earnings should be reduced by about twenty-four percent. Having heard the offer to prove, the trial court still excluded evidence of personal consumption.

The jury returned a verdict in favor of Stanley. The Court of Appeals affirmed. *Elmer Buchta Trucking, Inc. v. Stanley,* 713 N.E.2d 925 (Ind.Ct.App.1999). We granted transfer.

### I. Evidence of Personal Consumption

Buchta first asserts that the trial court erred in prohibiting evidence about Stanley's personal consumption.[1]

*A. Wrongful Death Statute.* At common law, there was no liability in tort for the death of another. *Ed Wiersma Trucking Co. v. Pfaff,* 678 N.E.2d 110 (Ind.1997), *adopting,* 643 N.E.2d 909, 911 (Ind.Ct.App. 1994). In 1852, the General Assembly passed the predecessor statute to our current law, allowing the personal representative of a deceased to bring an action for wrongful death but limiting damages to $5,000. *Id.* The damages recovered inured to the benefit of the surviving spouse and children, if any, or to the next of kin. *Id.*

The legislature has amended the act a good many times during the intervening century and a half. It has, for example, added the requirement of dependency in relation to the decedent's children and next of kin, added a third class of "death creditor" beneficiaries, and increased the limits on recovery. *Id.*

By 1965, the statute had reached its present form, which recognizes three classes of beneficiaries and provides that the personal representative is the proper party to maintain an action for damages for the benefit of the estate beneficiaries. *See* Ind.Code Ann. § 34–23–1–1 (West 1999). Damages for medical, hospital, funeral and burial expenses inure to the estate and to the payment of these expenses, while the remainder of damages inure to the exclusive benefit of the decedent's spouse and dependent children, if any, or to the dependent next of kin. *Id.*

The portion of the statute pertinent to the present case now reads as follows:

When the death of one is caused by the wrongful act or omission of another, the personal representative of the for-

1. Stanley claims that Buchta failed to preserve this issue for appeal because it did not object to preliminary instructions on damages, thus establishing the "law of the case." We disagree. At trial, the defendant sought to present evidence barred by the trial court's rulings on the plaintiffs' motions in limine. The defendant also made an offer to prove. Thus, the exclusion issue was fully presented to the court during trial, and the defendant did not waive the claim of error on appeal. *See Barnes v. Barnes,* 603 N.E.2d 1337, 1345 (Ind.1992).

mer may maintain an action therefore against the latter, ... When the death of one is caused by the wrongful act or omission of another, the action shall be commenced by the personal representative of the decedent within two (2) years, *and the damages shall be in such an amount as may be determined by the court or jury, including, but not limited to, reasonable medical, hospital, funeral and burial expenses, and lost earnings of such deceased person resulting from said wrongful act or omission.*

Ind.Code Ann. § 34–23–1–1 (emphasis added).

**B. *Statutory Interpretation.*** When deciding questions of statutory interpretation, appellate courts need not defer to a trial court's interpretation of the statute's meaning. Rather, we independently review the statute's meaning and apply it to the facts of the case under review. *See Figg v. Bryan Rental Inc.,* 646 N.E.2d 69 (Ind.Ct.App.1995), *trans. denied.* If a statute is unambiguous, we may not interpret it, but must give the statute its clear and plain meaning. *In re Grissom,* 587 N.E.2d 114 (Ind.1992). If a statute is ambiguous, however, we must ascertain the legislature's intent and interpret the statute so as to effectuate that intent. *Whitacre v. State,* 629 N.E.2d 1236 (Ind.1994), *adopting,* 619 N.E.2d 605, 606 (Ind.Ct.App.1993). A statute is ambiguous where it is susceptible to more than one interpretation. *Amoco Prod. Co. v. Laird,* 622 N.E.2d 912 (Ind.1993).

Here, Buchta and Stanley disagree about the import of the phrase "lost earnings of [the] deceased person." Buchta argues that since the statute does not explicitly mention a deduction for the deceased's personal living expenses, such a deduction should be allowed. Conversely, Stanley argues that since the statute says that damages "shall include" the lost earnings of the deceased, and does not mention deductions for personal expenses, such a deduction is prohibited.

The words of the statute arguably supports both of the competing interpreta-tions advocated by the parties. Thus, we examine the legislature's purpose in enacting the wrongful death statute. In doing so, we are hardly writing on a clean slate.

Indiana's courts have long held that the purpose of the wrongful death statute was "to create a cause of action to provide a means by which those who have sustained a loss by reason of the death may be compensated." *In re Estate of Pickens,* 255 Ind. 119, 126, 263 N.E.2d 151, 155 (1970). "Pecuniary loss is the foundation of a wrongful death action, and the damages are limited to the pecuniary loss suffered by those for whose benefit the action may be maintained." *Wiersma,* 643 N.E.2d at 911 (citations omitted). "Pecuniary loss can be determined, in part, from the assistance that the decedent would have provided through money, services, or other material benefits." *Id.*

In *Consolidated Stone Co. v. Staggs,* 164 Ind. 331, 337, 73 N.E. 695, 697 (1905), this Court said the following about the measure of damages from wrongful death:

Under a statute like ours, which gives a new right of action, distinct from that which the deceased might have maintained, the measure of damages is compensation for the pecuniary loss sustained by the party or parties entitled to the benefit of the action. The sole inquiry is how many dollars are necessary to compensate the beneficiaries for the pecuniary loss caused to them by the wrongful death. The damages are not to be estimated at the value of the life lost, but at such a sum as will compensate the persons on whose behalf the action is brought for the pecuniary injury which they have sustained by the death.

*Id.* (citations and internal quotation marks omitted).

Consistent with this reading, the statute has long been understood to contemplate a deduction for the amount of personal maintenance expenses that the decedent would have incurred over the remainder of his lifetime.

As tending to establish the extent of these losses, it is proper to consider the probable future earnings of the husband and father, and his age, health, strength, occupation, habits, opportunities and capability are elements of this consideration. These cases recognize the rule that the gross earnings should be subject to deduction on account of the reasonable cost of his own support and that the present payment of the sum awarded in damages is a proper circumstance in determining the amount which shall be allowed as the equivalent of the earning capacity of the deceased.

*Pittsburg, Cincinnati, Chicago, & St. Louis Ry. Co. v. Burton,* 139 Ind. 357, 378, 37 N.E. 150, 156 (1894); *see also Richmond Gas Corp. v. Reeves,* 158 Ind.App. 338, 364, 302 N.E.2d 795, 813 (1973) (citing the *Voight* language favorably).

The court instructed the jury that they were entitled to assess as damages "a sum equal to the amount the deceased *might* have earned, as shown by the evidence, not to exceed the sum of $10,000 during the period of his life, in which he would have probably earned money, deducting therefrom the reasonable cost of his own support, and making a fair deduction for the present payment of said sum."

*Ohio & Mississippi Ry. Co. v. Voight,* 122 Ind. 288, 295–96, 23 N.E. 774, 776 (1890).

As in the 1970 case of *Pickens,* 255 Ind. 119, 263 N.E.2d 151, we repeated this notion about the measure of recovery in *Burnett v. State,* 467 N.E.2d 664 (Ind.1984), in which we considered whether a jury properly assessed damages under the wrongful death statute and wrote:

In the case at bar, for the purpose of providing a basis for a jury assessment of lost earnings, plaintiff introduced income figures, but did not satisfy the jury's need to know how to translate those amounts into an approximation of the actual monetary loss she suffered by reason of [decedent's] death. She did not indicate, for example, by how much these figures should be reduced to account for [decedent's] personal and business expenses.

*Id.,* 467 N.E.2d at 666.

■ Thus, in applying the wrongful death statute to compensate the deceased's beneficiaries for losses they suffer, the defendant should be permitted to present evidence of the deceased's personal consumption. If juries cannot deduct the deceased's personal living expenses from lost earnings, the amount of the award will necessarily exceed the actual financial loss experienced by the beneficiaries. This result is not one contemplated by the statute. Therefore, the proper measure of damages must include a deduction based on the costs of this personal maintenance.

■ Moreover, the statute says that "damages shall be in such an amount as may be determined by the court or jury," Ind.Code § 34–23–1–1, and determination of the amount of pecuniary loss in a particular case has long been recognized as a function of the jury. *State v. Bouras,* 423 N.E.2d 741, 746 (Ind.Ct.App.1981) (citing *New York Central R.R. Co. v. Johnson,* 234 Ind. 457, 463, 127 N.E.2d 603, 606 (1955); *Henschen v. New York Central R.R. Co.,* 223 Ind. 393, 400, 60 N.E.2d 738, 740 (1945)); *see also Consolidated Stone Co.,* 164 Ind. 331, 73 N.E. 695. For this reason, juries should be allowed to consider all of the available evidence in determining the extent of loss to the deceased's beneficiaries.

That juries should account for actual financial loss has been held the object of the statute from the Nineteenth Century through to the last two decades. We cannot find legislative desire to alter that formula in the relatively general amendments adopted thirty-six years back.

■ Accordingly, we conclude that the trial court erred in granting Stanley's motions in limine and in preventing Buchta from introducing evidence regarding the amount of his lost earnings that Michael Stanley would have consumed for personal expenses throughout his life.

## II. Jury Instructions

■ Buchta also contends the trial court erred in refusing two of its proposed jury instructions. The two tendered instructions read:

> It is not the purpose of this proceeding to punish Elmer Buchta Trucking, Inc. for the death of Michael G. Stanley. Instead, the damages you award must be limited to that amount of money which is required to compensate Christina Stanley and her three children for their pecuniary loss they have sustained by reason of Michael G. Stanley's death. This loss can be determined, in part, from the assistance that the decedent would have provided through money, services, or other material benefits. However, this loss also includes the loss to the children of parental training and guidance and the loss of love and affection to the surviving spouse.

(R. at 401; Defendant's Proposed Final Instruction No. 6.)

> Under Indiana law, your award for damages in this wrongful death case may not include damages for grief, sorrow, or wounded feelings.

2. Specifically, the instruction read:
The personal representatives of the estate are entitled to recover for the benefit of Michael Stanley's estate, the reasonable funeral and burial expenses of Michael Stanley.
The personal representatives of the estate are also entitled to recover for the benefit of Christina Stanley, Brooke, Matthew and Casey Stanley, the lost earnings of Michael Stanley resulting from his death. In determining Michael Stanley's lost earnings, you may consider his age, health and normal life expectancy, immediately before the injury causing his death, and Michael Stanley's occupation and earning capacity.
The personal representatives of the estate are also entitled to recover, for the benefit of Christina Stanley, the reasonable value of the loss of care, companionship, love and affection that Christina Stanley reasonably expected to receive from the continued life of her husband, Michael Stanley.
The personal representatives of the estate are also entitled to recover for the benefit of

(R. at 403; Defendant's Proposed Final Instruction No. 8.)

■ The giving of jury instructions lies within the trial court's sound discretion, and we review the court's refusal to give a tendered instruction for an abuse of that discretion. *CSX Trans., Inc. v. Kirby,* 687 N.E.2d 611 (Ind.Ct.App.1997), *trans. denied.*

■ In determining whether it is error to refuse a tendered instruction, we consider 1) whether the instruction correctly states the law, 2) whether there is evidence in the record supporting the instruction, and 3) whether the substance of the instruction is covered by other instructions. *Peak v. Campbell,* 578 N.E.2d 360, 361 (Ind.1991). Moreover, one seeking a new trial on the basis of an improper jury instruction must show "a reasonable probability that substantial rights of the complaining party have been adversely affected." *Id.* at 362 (quoting *Sullivan v. Fairmont Homes, Inc.,* 543 N.E.2d 1130, 1140 (Ind.Ct.App.1989)).

Our review of the final instructions given at trial reveals that the court delineated the elements of damages recoverable under the wrongful death statute.[2] (R. at

Brooke Stanley, the reasonable value of the loss of care, love and affection, parental training and guidance that Brooke Stanley reasonably expected to receive from the continued life of her father, Michael Stanley.
The personal representatives of the estate are also entitled to recover for the benefit of Matthew Stanley, the reasonable value of the loss of care, love and affection, parental training and guidance that Matthew Stanley reasonably expected to receive from the continued life of his father, Michael Stanley.
Finally, the personal representatives of the estate are also entitled to recover for the benefit of Casey Stanley, the reasonable value of the loss of care, love and affection, parental training and guidance that Casey Stanley reasonably expected to receive from the continued life of her father, Michael Stanley.
At the time of his death, Michael Stanley was 32 years old and had a life expectancy

406–07.) Indeed, Buchta does not challenge the propriety of this instruction. Instead, it contends that the court should have also instructed the jury on the elements for which Stanley was *not* entitled to recover.

It is not error to refuse an instruction when the subject matter is substantially covered by other instructions given by the court. *Get–N–Go, Inc. v. Markins*, 550 N.E.2d 748, 751 (Ind.1990). Moreover, we do not require a court to read negative instructions when the jury has been properly instructed through a positive instruction on the same issue. *See Dayton Walther Corp. v. Caldwell*, 273 Ind. 191, 402 N.E.2d 1252 (1980).

The jury was also instructed that "[a] corporation is entitled to the same fair trial at your hands as is a private individual" and was told of the plaintiff's burden of "providing sufficient evidence to rationally assess damages." (R. at 395, 402.) Lastly, the court instructed jurors that their award could not be based on "mere conjecture, speculation, or guesswork." (R. at 402.)

The trial court's refusal to give Buchta's tendered instructions does not constitute reversible error.

### Conclusion

While Buchta's claims concerning instructions are unavailing, the court's refusal to permit evidence about the deceased's personal consumption was reversible error. We remand for a new trial.

SULLIVAN, BOEHM, and RUCKER, JJ., concur.

DICKSON, J., dissents with separate opinion.

DICKSON, Justice, dissenting.

The Wrongful Death Act declares that damages shall include "lost earnings of such deceased person resulting from said wrongful act or omission." I cannot agree that the phrase "lost earnings" is ambiguous. I believe that the majority errs in construing this phrase and assigning it a meaning contrary to plain and ordinary usage. I find the analysis of Judge Staton on behalf of the Court of Appeals to be more satisfactory, and would affirm the trial court.

of an additional 41 years, which would be to age 73.

