L. Ann SWEET, Appellant–Plaintiff,

v.

ART PAPE TRANSFER, INC. and Michael L. Sanger, Appellees–Defendants.

No. 43A05–9904–CV–168.

Court of Appeals of Indiana.

Dec. 28, 1999.

---

George T. Patton, Jr., Bernie W. Keller, Bose, McKinney & Evans, LLP, Indianapolis, Indiana, Thomas H. Singer, South Bend, Indiana, Attorneys for Appellant.

Robert J. Kopka, Jeffrey S. Wrage, Kopka, Landau & Pinkus, Crown Point, Indiana, Attorneys for Appellees.

## OPINION

MATTINGLY, Judge

L. Ann Sweet (Sweet) appeals[1] a summary judgment in favor of Art Pape Transfer and Michael L. Sanger (collectively, Art Pape Transfer) and the denial of her own motion for summary judgment. Sweet raises a single issue that we restate as whether she had standing to bring an action for the wrongful death of her daughter based upon the daughter's status as an enrollee in a vocational school or program when the daughter had asked to pursue an educational program at a school of natural health where she was employed and had taken textbooks home and commenced studying, but had never completed an enrollment application and had not registered to take courses.

We reverse and remand for entry of partial summary judgment for Sweet.

## FACTS AND PROCEDURAL HISTORY

Sweet brought an action for damages for the wrongful death of her daughter, Shawnee Rose Ulrey, after Shawnee died in a collision with a truck driven by Sanger as an employee of Art Pape Transfer. Shawnee was twenty-one years old and living with Sweet, who was providing her daily living expenses.

About four months before she was killed, Shawnee became employed at the Trinity School of Natural Health, a non-profit Christian institution that offers programs in the study of natural health. These self-study programs last for a period of one to two and one-half years and lead to non-traditional designations such as Master Herbalist, Doctor of Naturopathy, and Master of Holistic Health. Students in the programs answer a "module" of questions at the end of each section of their texts and send the answers to Trinity to be graded. Between 2300 and 2400 students are enrolled at the school. The school is not accredited through or financially supported by the state or federal governments. Indiana does not license herbalists or naturopaths and no diploma is required of persons who work in those fields.

As an employee of Trinity, Shawnee was entitled to pursue free of charge the courses offered there. She had sought and received permission from the registrar to pursue the Master Herbalist course and had taken some textbooks home and had begun studying. However, Shawnee never completed an enrollment application and the student records do not reflect that she was enrolled at Trinity as a student. The registrar testified that no enrollment application or financial agreement was requested or required because of Shawnee's status as an employee. Both Art Pape Transfer and Sweet moved for summary judgment. The trial court granted Art Pape Transfer's motion and denied Sweet's.

## DISCUSSION AND DECISION

### Standard of Review

When reviewing the grant of a summary judgment motion, we apply the same standard applicable in the trial court. Summary judgment is proper only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule

1. We heard oral argument on November 3, 1999.

56(C). We do not weigh the evidence, but will consider the facts in the light most favorable to the non-moving party. *Grose v. Bow Lanes, Inc.*, 661 N.E.2d 1220, 1224 (Ind.Ct.App.1996). We must reverse the grant of a summary judgment motion if the record discloses an incorrect application of the law to those facts. *Ayres v. Indian Heights Volunteer Fire Dep't, Inc.*, 493 N.E.2d 1229, 1234 (Ind.1986). The dispute before us involves the construction of the statutory terms "enrolled" and "vocational school or program." Because the interpretation of a statute is a question of law reserved for the courts, *see, e.g., ModuForm, Inc. v. Verkler Contractor*, 681 N.E.2d 243, 248 (Ind.Ct.App.1997), conflicting factual testimony does not necessarily give rise to an issue of fact which would preclude summary judgment.

On appeal from a grant of summary judgment, the burden is on the appellant to prove the trial court erred in determining there were no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law. *Welch v. Scripto–Tokai Corp.*, 651 N.E.2d 810, 813 (Ind.Ct.App.1995). The fact that the parties make cross-motions for summary judgment does not alter our standard of review. Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Hendricks County Bank & Trust Co. v. Guthrie Bldg. Materials, Inc.*, 663 N.E.2d 1180, 1183 (Ind.Ct.App.1996).

### The Wrongful Death Statute

Sweet's action was brought under Ind. Code § 34–23–2–1, which allows certain plaintiffs to bring an action to recover certain types of damages against a person whose wrongful act or omission caused the injury or death of a child. The statute defines "child" to include an unmarried individual without dependents who is less than twenty-three years old and is "enrolled in … a vocational school or program." *Id.* § 34–23–2–1(a)(2). In its grant of summary judgment for Art Pape Transfer, the trial court determined that Shawnee was not a "child" for purposes of the wrongful death statute because she was not at the time of her death enrolled in a vocational school or program. For that reason, it held Sweet lacked standing to bring this action for Shawnee's wrongful death. We disagree, and find that Shawnee was enrolled in a vocational school or program and that Sweet thus had standing to bring this action.

### Shawnee's Enrollment

■ The wrongful death statute does not define "enrolled," nor have the parties offered us any Indiana decisions that address the meaning of "enrollment" in the context of a statutory limitation on standing in wrongful death actions.[2] Art Pape Transfer premises its argument that Shawnee was not "enrolled" as a matter of law upon those common definitions of the word "enroll" which indicate the word denotes the making of a written record. *See, e.g., Webster's Third New Int'l Dictionary* 755 ("enroll" means "to insert, register, or enter … in a list, catalog, or roll"; "to write out in formal or legal form"); *Black's Law Dictionary* 624 (4th ed.1968) ("enroll" defined as "[t]o register; to make a record; to enter on the rolls of a court; to transcribe."). Art Pape Transfer also notes various statutes and regulations that indicate "enrollment" is defined in part by the formation of a written record, *e.g.*, 511 IAC 6–10–5 (requiring school corporations

---

**2.** In *People in the Interest of D.B.*, 767 P.2d 801, 802 (Colo.Ct.App.1988), a child was "enrolled" for purposes of an exception to the state's compulsory attendance law even though the child pursued the daily course work at home and reported to the school campus only periodically for testing. However, in that case the state was not challenging the student's status as "enrolled," and the court relied in part upon a change in the statutory language from "must attend" an independent school to "must be enrolled" in one. In *Wirth v. Corning*, 75 F.Supp. 817, 819 (D.D.C.1948), the court determined a child was "enrolled" for purposes of entitlement to a free public education where the child's name had been recorded by an enrollment officer but when the child had never received any actual class instruction.

to make and maintain certain records for each enrolled student). Because there is no written evidence of Shawnee's enrollment, Art Pape Transfer asserts, she could not have, as a *matter of law,* been enrolled.

However, because Shawnee was an employee of Trinity as well as a student, the written records and other paperwork normally required of "enrolled" students would not have been required. Trinity employees were not required to fill out an application form before commencing their studies, though they would need to do so at some point before their degrees could be awarded. Similarly, an employee-student would have no reason to complete the financial agreement normally a part of the application and enrollment process, as the employees paid no tuition.

We further note that the Trinity program is a self-study course with no deadlines. As a result, some students whose "enrollment" is memorialized in writing have been enrolled for some time without having obtained a degree or even submitted a lesson. Shawnee was, Sweet asserts, "doing what every one of the other 2300 students at Trinity did. She secured the materials, lessons, and test modules, and was studying those in order to get her degree as a Master Herbalist." (Br. of Appellant at 18.)

We decline to impose upon this wrongful death litigant a requirement of a written enrollment record where the statute includes no such requirement and where the victim's status as an employee-student would render a written enrollment record superfluous. The trial court erred to the extent it determined Sweet lacked standing because Shawnee was not enrolled at Trinity.

### *Trinity's Status as a Vocational School or Program*

■ The wrongful death statute offers no definition of "vocational school or pro-

gram" nor can a definition for those terms be found elsewhere in the Indiana Code. The Code does, in the definitions applicable to public schools and to non-public schools which have voluntarily become accredited, define "vocational education" as "any education the major purpose of which is to prepare a person for profitable employment." Ind.Code § 20–10.1–1–11(a). In the rules establishing the curricular requirements for commissioned schools, the definition of "vocational education program areas" includes, among other areas, "the recognized occupational fields of . . . consumer and homemaking; . . . home economics; . . . [and] . . . health . . . for which organized educational programs are developed that are directly related to the preparation of individuals for paid or unpaid employment, or for additional preparation for a career requiring other than a baccalaureate or advanced degree." 511 IAC 6–1–1.[3]

Sweet argues the Trinity program is "vocational" under the plain meaning of that word because it prepares its students to advise clients about natural health in jobs with chiropractors and medical doctors, in health food stores, and with distributors of nutritional supplements. Sweet presented evidence that Trinity students were so employed. The Trinity program is not accredited by the state or federal governments;[4] however, nothing in the wrongful death statute requires accreditation, record-keeping, or government support or recognition of a vocational school or program.

Art Pape Transfer characterizes the Trinity program as "avocational" and aimed at self-improvement rather than "vocational" and aimed at providing training for a career. It notes that Trinity maintains no job placement bureau and

---

3. In the 1999 supplement, the language in this section was changed to delete the reference to "home economics" and "consumer and homemaking" was changed to "family and consumer sciences."

4. Trinity is accredited by the American Naturopathic Medical Association.

that Trinity states in its brochure that its programs are for "personal enrichment, self-improvement and focus on a pure unadulterated, natural lifestyle." (R. at 336.) The brochure further indicates the school "is not designed to provide a vocational curriculum to meet the requirement of any particular state where a license is required." (*Id.*)

We believe the statements relied upon by Art Pape Transfer are in the nature of a disclaimer regarding the school's lack of government accreditation or other requirements for licensure, rather than an acknowledgement that the school's curriculum is avocational rather than vocational.[5] The brochure states "our greatest asset is the quality of our graduates and the continuing contribution they are making to the health and wellness of people everywhere." (R. at 337.) The curricula for the various degree programs include such courses as "Choices in Therapy," "Medical and Legal Studies," "Therapies for Stress vs. Weakened Conditions," (R. at 338–39) and other courses plainly directed at more than "self improvement."

Other jurisdictions have addressed what may be included as a vocational program. In *Division of Child Support Enforcement v. Gosney*, 928 S.W.2d 892, 894 (Mo.Ct. App.1996), the court determined the Northeast Missouri Bible College was within the definition of "institution of vocational education" even though it was not accredited and credits earned there could not be transferred to an accredited school. The court relied on the statutory wording to the effect that *any* post-secondary schooling was an "institute of vocational education" and the fact that the statute imposed no requirement that the school be accredited.

The same court interpreted what was an institution of vocational education in the context of child support in *McIlroy v. Simmons*, 832 S.W.2d 949, 951 (Mo.Ct.App.

1992). The statute defined an institution of vocational education to include any postsecondary training or school for which the student is assessed a fee and attends classes regularly. The court held an accounting school in Italy was such an institution even though it did not assess a fee, reasoning that it would violate the spirit of the law to punish the child for pursuing her education.

The trial court's determination that Trinity is not a "vocational school or program" is inconsistent with the Indiana statutes and rules which have recognized as "vocational" courses of study in "consumer and homemaking," home economics, health, and other "education the major purpose of which is to prepare a person for profitable employment." The Trinity curriculum is a "vocational school or program" for purposes of the wrongful death statute and the trial court erred to the extent it determined Sweet lacked standing to bring her action on the ground the program in which Shawnee was enrolled was not "vocational."

## CONCLUSION

Because Shawnee was, as a matter of law, enrolled in a vocational school or program at the time of her death, the trial court improperly granted summary judgment to Art Pape Transfer and improperly denied summary judgment for Sweet on the question whether Sweet had standing to bring this wrongful death action. We reverse and remand with instructions to enter partial summary judgment on this issue in favor of Sweet.

Reversed and remanded.

SHARPNACK, C.J., and BAKER, J., concur.

---

5. The statement Art Pape Transfer cites as evidence the Trinity program is only "avocational" is prefaced by the following: "Some states require a license to work in specific areas of the natural health field" and is followed by "if your state is one of the few which requires a license, it would be prudent to contact your state and learn of its individual requirements so you will not be in violation of any laws." (R. at 336.)