**Robert HOWARD and Lynn Howard, Individually and as Co-administrators of the Estate of Amber Howard, Appellants–Plaintiffs,**

v.

**E & B PAVING, INC., and Indiana Department of Transportation And the State of Indiana, Appellees–Defendants.**

No. 46A05–0907–CV–419.

Court of Appeals of Indiana.

Jan. 26, 2010.

Rehearing Denied April 6, 2010.

Kenneth J. Allen, Robert D. Brown, Kenneth J. Allen & Associates, Valparaiso, IN, Attorneys for Appellants.

Bruce P. Clark, Jennifer E. Davis, Bruce P. Clark & Associates, St. John, IN, Elizabeth A. Knight, Knight, Hoppe, Kurnik & Knight, Schererville, IN, Attorneys for Appellee.

## OPINION

BAKER, Chief Judge.

Appellants-plaintiffs Robert and Lynn Howard (the Howards), individually and as co-administrators of the Estate of their daughter, Amber Howard, appeal the trial court's grant of summary judgment in favor of appellee-defendant E & B Paving, Inc. (E & B), on their wrongful death claim. Specifically, the Howards claim that the trial court erred in determining that they were precluded from pursuing their action against E & B under the Child Wrongful Death Act [1] (the Act) because the designated evidence established that Amber was eligible to register for classes

1. Ind.Code § 34–23–2–1.

at Ivy Tech, and Ivy Tech considered her a "continuing student." Appellants' Br. p. 5, 11. Thus, the Howards maintain that they should be allowed to recover under the Act because Amber was "enrolled" as a student at a post-secondary educational institution when the accident occurred. *Id.* at 9–17. Concluding that the trial court properly determined that Amber was not a "child" within the meaning of the Act, we affirm the trial court's grant of summary judgment in favor of E & B.

## FACTS

In June 1999, Amber graduated from Kouts High School. Although Amber was accepted for enrollment at Ivy Tech as a general studies major, she did not begin taking classes until the spring of 2000. Also, while Amber continued taking classes in the summer and fall of 2000, she took time off in the spring of 2001. Thereafter, Amber re-enrolled during the fall semester of 2001 and continued through the spring semester of 2002. Amber did not enroll or register for classes in the fall of 2002 or during the summer of 2002. Moreover, she did not register for any classes for the spring 2003 semester, even though the registration period commenced on October 21, 2002.

Approximately one month after registration began for the spring 2003 semester, Amber was involved in an automobile accident on November 13, 2002, and died as a result of her injuries. At the time of the accident, E & B was performing roadwork along State Road 8.

The Howards filed their complaint on May 12, 2004,[2] contending that E & B was negligent and breached its duty to use reasonable care when performing the roadwork. More specifically, the Howards alleged that E & B's negligence caused Amber to leave the road, travel down an embankment, and strike a tree "with great force and violence." Appellants' App. p. 31. The Howards also alleged that INDOT and the State were liable because they were supervising E & B's work and breached their duty of care to Amber and "other motorists on the roadway." *Id.* at 36.

Finally, the Howards alleged that Calvin Napier, another motorist who was traveling on State Road 8 at the time of the accident, was speeding, had failed to keep a proper lookout for approaching vehicles, and "failed to take reasonable evasive maneuvers to avoid causing Amber's vehicle to leave the roadway." *Id.* at 39.

Thereafter, on April 26, 2005, E & B filed a motion for partial summary judgment, claiming that it was entitled to judgment as a matter of law because Amber was an adult and the Howards, therefore, were precluded from recovering under the Act.[3] The trial court denied E & B's motion for summary judgment, and concluded that the Act applied in these circumstances.

This court subsequently denied E & B's motion for acceptance of an interlocutory appeal, and on May 4, 2009, E & B renewed its motion for summary judgment. The Howards responded, contending that Amber was, indeed, a child within the purview of the Act. Following a hearing, the trial court reversed itself and concluded that Amber was an adult and not a child for purposes of the Act. More particularly,

---

**2.** The Howards amended their complaint on July 30, 2004.

**3.** If the Act does not apply, suit would have to be filed under Indiana Code section 34–23–1–2, the Adult Wrongful Death Act. This statute caps liability for loss of love and companionship at $300,000. I.C. § 34–23–1–2(e).

the trial court's order of June 19, 2009, provided that

At the time of her death in November 2002, Amber was not taking classes at Ivy Tech nor had she registered for classes for the spring semester of 2003. Amber had last taken classes roughly six months prior to her death, during the spring semester of 2002. As the court's holding in *Ledbetter* [*v. Ball Memorial Hospital*, 724 N.E.2d 1113, 1115 (Ind.Ct.App.2000)] forecloses consideration of intent to return to school in determining whether Amber should be considered enrolled, the Court looks not only to whether or not she had been admitted, but also to whether or not she was registered for classes and actively participating in the appropriate course of study. At the time of her death, although Amber had been admitted to Ivy Tech, she had not satisfied either of the other two factors necessary to be considered enrolled. Had she simply enrolled for classes but passed away prior to the beginning of classes, this court believes that affirmative act would have been sufficient to put her within the definition of a child in the context of the Act. However, she had not registered. Thus, it seems the facts of this suit do not demonstrate that at the time of her death Amber "[wa]s enrolled in a post-secondary education institution or a career and technical education school or program that is not a postsecondary educational program."

. . .

The court further expressly finds that this is a judgment on less than all of the issues involved in this claim. However, the impact of this partial judgment on the claim is so significant that there is no just reason to delay entry of the judgment as a final and appealable judgment. To delay entry as a final and appealable judgment would demand the significant and unnecessary expenditure of resources for the [parties] as well as for the court if the possibility of appeal is delayed until after a trial.

It is therefore ordered that final judgment is entered as to the status of Amber Howard as an adult and that Amber Howard was not a child at the time of her death within the meaning of Indiana Code § 34–23–2–1(a), thereby making this Order a final, appealable judgment concerning the measure of damages in this case.

*Id.* at 27–28. The Howards now appeal.

## DISCUSSION AND DECISION

### I. Standard of Review

The purpose of summary judgment is to terminate litigation for which there can be no factual dispute and which can be determined as a matter of law. *Beradi v. Hardware Wholesalers, Inc.*, 625 N.E.2d 1259, 1261 (Ind.Ct.App.1993). When reviewing a grant of summary judgment, our standard of review is the same as that of the trial court. *Dreaded, Inc. v. St. Paul Guardian Ins. Co.*, 904 N.E.2d 1267, 1269 (Ind.2009). Considering only those facts that the parties designated to the trial court, we must determine whether there is a genuine issue as to any material fact and whether the moving party is entitled to a judgment as a matter of law. *Id.*; Ind. Trial Rule 56(C). In answering these questions, we construe all factual inferences in the non-moving party's favor and resolve all doubts as to the existence of a material issue against the moving party. *N. Ind. Pub. Serv. Co. v. Bloom*, 847 N.E.2d 175, 180 (Ind.2006).

The moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as

a matter of law. Once the movant satisfies that burden, the burden shifts to the non-moving party to designate and produce evidence of facts showing the existence of a genuine issue of material fact. *Mullin v. Mun. City of South Bend*, 639 N.E.2d 278, 281 (Ind.1994). A grant of summary judgment will be carefully reviewed to ensure that a party was not denied his or her day in court. *Evan v. Poe & Assocs., Inc.*, 873 N.E.2d 92, 97–98 (Ind.Ct.App.2007). If there is any doubt as to which conclusion a jury might reach, then summary judgment is inappropriate. *Asbestos Corp. v. Akaiwa*, 872 N.E.2d 1095, 1096 (Ind.Ct.App. 2007).

Finally, we do not owe deference to the findings and conclusions entered by the trial court in a summary judgment order. *Trans–Care, Inc. v. Comm'rs of Vermillion*, 831 N.E.2d 1255, 1258 (Ind.Ct.App. 2005). Although such findings and conclusions may assist our review, we will affirm if the trial court's grant of summary judgment can be sustained on any theory or basis in the record. *Beck v. City of Evansville*, 842 N.E.2d 856, 860 (Ind.Ct.App. 2006).

## II. The Howards' Claims

The Howards contend that the trial court erred in granting E & B's motion for summary judgment and in concluding that Amber was an "adult" at the time of the accident. Specifically, the Howards maintain that the designated evidence establishes that Amber was a child within the meaning of the Act because she was "enrolled" at Ivy Tech. As a result, the Howards assert that the trial court's conclusion that Amber was an adult at the time of the accident "leads to unjust and absurd results." Appellants' Br. p. 17.

In resolving this issue, we first note that the Act defines a child as an unmarried individual without dependents who is:

(1) less than twenty (20) years of age; or

(2) less than twenty-three (23) years of age *and is enrolled in a postsecondary educational institution or a career and technical education school or program that is not a postsecondary educational program.*

I.C. § 34–23–2–1(a) (emphasis added). In construing this statute, we note that in *Sweet v. Art Pape Transfer Inc.*, 721 N.E.2d 311 (Ind.Ct.App.1999), the decedent, who was twenty-one years old, was employed at the Trinity School for Natural Health (Trinity). One of the benefits of being an employee of Trinity was the ability to take classes without meeting certain "formal" requirements. More specifically, the decedent could take classes without the need of formal admission, registration, or financial agreement. *Id.* at 312.

The decedent purchased textbooks, studied, and pursued self-study courses to attain a Master Herbalist degree. Following the decedent's death from injuries she sustained in an automobile accident, her mother filed a wrongful death suit under the Act against the defendant truck driver and his employer. In seeking summary judgment, the defendants asserted that the decedent was not "enrolled in a vocational school or program" within the meaning of the Act. *Id.* at 313. Thus, the defendants asserted that the decedent was not a "child" under the Act.

Although the trial court entered summary judgment for the defendants, we reversed, noting the school registrar's testimony that neither a formal enrollment application nor financial agreement was required by the school because of the decedent's status as an employee. We also observed that

because [the decedent] was an employee of Trinity as well as a student, the written records and other paperwork nor-

mally required of "enrolled" students would not have been required. Trinity employees were not required to fill out an application form before commencing their studies, though they would need to do so at some point before their degrees could be awarded. Similarly, an employee-student would have no reason to complete the financial agreement normally a part of the application and enrollment process, as the employees paid no tuition.

*Id.* at 314. Additionally, it was held that

> We decline to impose upon this wrongful death litigant a requirement of a written enrollment record where the statute includes no such requirement and where the victim's status as an employee-student would render a written enrollment record superfluous.

*Id.* Finally, we determined in *Sweet* that it was not enough that the decedent was given permission to pursue a course of study, and specifically acknowledged and addressed the fact that the decedent was actually engaged in course work at the time of her death. *Id.* More particularly, we noted that

> [T]he Trinity program is a self-study course with no deadlines. As a result, some students whose "enrollment" is memorialized in writing have been enrolled for some time without having obtained a degree or even submitted a lesson. [The Decedent] was, Sweet asserts, "doing what every one of the other 2300 students at Trinity did. She secured the materials, lessons, and test modules, and was studying those in order to get her degree as a Master Herbalist."

*Id.*

After *Sweet*, we had the occasion to address the issue of a student's intent to pursue a degree when considering whether the individual is a child under the Act. In

*Ledbetter v. Ball Memorial Hospital,* 724 N.E.2d 1113 (Ind.Ct.App.2000), the parents brought a wrongful death claim following the death of their twenty-year-old daughter, Trenda. At the time of her death, Trenda was unmarried and had no dependents. She lived at home, had graduated from high school in 1993, and enrolled in fall classes at Ivy Tech. After completing the fall semester, Trenda again enrolled for the spring semester of 1994, but withdrew and began attending adult basic education classes in another program. When Trenda was killed in 1995, she was not enrolled in any Ivy Tech courses.

Trenda's parents sought damages for wrongful death under the Act. Like the Howards, Trenda's parents admitted that Trenda was not actually enrolled in courses at the time of her death. However, because Trenda allegedly intended to return to Ivy Tech, her parents claimed that they could sue under the Act. *Id.* at 1115. We expressly rejected this argument, stating that the mere intent of a person to pursue a degree is not the same as the enrollment required by the Act. *Id.* We determined that

> Despite our sympathy for the great loss the Ledbetters have sustained as parents, we cannot in good faith stretch the meaning of the statute as far as they suggest. Thus, we hold that "is enrolled" unambiguously means to be registered in a school, or to be de facto registered, as in *Sweet,* 721 N.E.2d at 314. In Trenda's case, we find no evidence of enrollment in any institution of higher learning or vocational program for over one year before her death.

*Id.* at 1116.

Notwithstanding our decision in *Ledbetter,* the Howards urge that Amber was enrolled at Ivy Tech at the time of her

death "because [she] was on the roll of accepted students, [and] was eligible to register for classes, without restriction, through the spring of 2004" and "Ivy Tech considered Amber a 'continuing student.'" Appellants' Br. p. 5, 11.

According to Amber's file, she attended classes at Ivy Tech in the Spring of 2000, Summer of 2000, Fall of 2000, Fall of 2001, and Spring of 2002. Appellants' App. p. 63, 110. She had not registered, was not enrolled, and did not attend any classes in the Summer of 2002 or the Fall of 2002. *Id.* Amber was not taking classes at the time of her death, and she had not yet registered for classes for the Spring of 2003. *Id.* Therefore, Amber was not enrolled in any institution of higher learning for two full semesters prior to her death, and had made no attempts to register for the upcoming semester. Moreover, when Ivy Tech's registrar was asked whether Amber was "enrolled" at the school, she responded: [N]o. She was not—she died in November of 2002, which would have been our fall of 2002 semester. And if she was not enrolled in courses she would not be considered as a "student." Appellant's App. p. 65.

In our view, none of the Howards' arguments sufficiently distinguish Amber from the decedent in *Ledbetter,* and can only be supported after assessing Amber's intent. As noted above, the Howards point to the fact that "Amber was continuing to pursue her education at Ivy Tech." Appellants' Br. p. 13. However, Amber had not taken any classes in the two semesters prior to her death. Moreover, the designated evidence indicates that Amber took no steps to enroll in classes for the spring 2003 semester. Nonetheless, the Howards assert that Amber intended to return to Ivy Tech, which, according to the *Ledbetter* holding, is not a valid consideration. *See Ledbetter,* 724 N.E.2d at 1117 (rejecting the argu-

ment that "enrollment" can mean "in pursuit of a degree and that one may pursue a degree without any evidence of one's being registered in any appropriate institution or program"). Moreover, although the Howards assert that "if not for [Amber's] untimely and tragic death, she would have attended Ivy Tech in the spring 2003 semester," Appellants' Br. p. 14, we again emphasize that Amber had not taken any steps to secure enrollment for classes during the spring 2003 semester.

The Howards further attempt to distinguish Amber's circumstances from those in *Ledbetter* by pointing out that she never formally withdrew from classes, but took "an occasional semester off due to finances, or for some other reason." Appellants' Br. p. 16. However, the *Ledbetter* holding was not dependent on the reason for Trenda's non-enrollment in courses. Rather, we examined the language of the Act and Trenda's failure to enroll in courses and found that because she was not enrolled, she did not meet the definition of a child under the Act. *Ledbetter,* 724 N.E.2d at 1117.

Finally, we reject the Howards' assertion that because Amber was considered a "continuing student" and was eligible to re-enroll in courses she was necessarily "de facto enrolled." Appellants' Br. p. 11. As discussed above, *Ledbetter* also concerned an Ivy Tech student who also would have been eligible to re-enroll. Ivy Tech students are considered eligible to enroll for a period of two years before they have to re-apply for admission. Appellants' App. p. 65.

The designated evidence in *Ledbetter* established that Trenda initially enrolled in Ivy Tech classes for the fall semester of 1993 and took no classes thereafter. She died on July 1, 1995, less than 2 years after she last took classes at Ivy Tech. Based on Ivy Tech's stated policy, Trenda

would have been eligible to enroll—without having to re-apply—at the time of her death. Notwithstanding these circumstances, the Howards miss the mark because eligibility and intent to enroll were not dispositive of our holding in *Ledbetter*, 724 N.E.2d at 1117. Similarly, we cannot say that Amber's intent to enroll in courses is dispositive here. As a result, because the undisputed designated evidence established that Amber was not enrolled in a postsecondary institution at the time of her death, we must conclude that the trial court properly granted summary judgment for E & B.

The judgment of the trial court is affirmed.

BAILEY, J., and ROBB, J., concur.