# FOR PUBLICATION



ATTORNEYS FOR APPELLANTS:

**MARY BETH RAMEY**
Ramey & Hailey
Indianapolis, Indiana

**NICHOLAS F. BAKER**
The Hastings Law Firm
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES:

**WILLIAM H. KELLEY**
**DARLA S. BROWN**
Kelley, Belcher & Brown
Bloomington, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

|  |  |  |
|---|---|---|
| MATTHEW LONGEST, Deceased, by ROBERT LONGEST, Administrator of the Estate and Parent of Matthew Longest, and ROBERT LONGEST, JR., Administrator of the Estate of MARIBEL LONGEST, Deceased and Parent of Matthew Longest, | ) ) ) ) ) ) ) | |
| Appellants - Plaintiffs, | ) ) | |
| vs. | ) ) | No. 47A05-1211-CT-594 |
| LISA M. SLEDGE, a minor, and ROGER BROWN and DONNA SLEDGE, a/k/a DONNA SLEDGE BROWN, | ) ) ) | |
| Appellees - Defendants. | ) ) | |

APPEAL FROM THE LAWRENCE CIRCUIT COURT
The Honorable Andrea J. McCord, Judge
Cause No. 47C01-9910-CT-894

**July 17, 2013**

**OPINION - FOR PUBLICATION**

**FRIEDLANDER, Judge**

Robert Longest Sr. and Maribel Longest (collectively, the Longests) filed a wrongful death action following the death of their son, Matthew Longest, and named Lisa Sledge, Donna Sledge Brown, and Robert Brown as defendants.[1]  The Longests appeal from a final judgment following the trial court's entry of partial summary judgment in favor of defendants on the Longests' claims under the Child Wrongful Death Statute[2] (CWDS) and the General Wrongful Death Statute[3] (GWDS).  The Longests raise the following issues for our review:

1.  Did the trial court err in granting summary judgment for the defendants on the Longests' CWDS claim based on its conclusion that Matthew was not a child for the purposes of the CWDS because he was not enrolled in a vocational school or program?

2.  Did the trial court err in granting partial summary judgment for the defendants on the Longests' GWDS claim based on its conclusion that the Longests were not Matthew's dependents for the purposes of the GWDS?

3.  Did the trial court abuse its discretion in limiting its award of attorney fees?

We affirm in part, reverse in part, and remand with instructions.

In 1998, twenty-one-year-old Matthew was living with his parents and participating in an informal, non-union apprenticeship to become a journeyman mason under his father's

---

[1] Robert Longest Sr. sued in dual capacities as Matthew's parent and as the administrator of Matthew's estate, while Maribel sued solely in her capacity as Matthew's parent.  During the pendency of the litigation in this matter, Maribel passed away.  Maribel and Robert Sr.'s surviving son, Robert Longest Jr., was named administrator of her estate and participates in this appeal in that capacity.

[2] At the time of Matthew's death, the CWDS was codified at Ind. Code Ann. § 34-1-1-8 (repealed July 1, 1998 by Pub. L. 1-1998, § 221).  Effective July 1, 1998, the CWDS was recodified at Ind. Code Ann. § 34-23-2-1 (West, Westlaw current through June 29, 2013, excluding P.L. 205-2013).  Additionally, the relevant language of the recodified statute was amended in 2008.  Thus, for the purposes of this opinion, we will refer to the language of the now-repealed I.C. § 34-1-1-8 when discussing the CWDS.

[3] At the time of Matthew's death, the GWDS was codified at Ind. Code Ann. § 34-1-1-2 (repealed July 1, 1998 by Pub. L. 1-1998, § 221).  Effective July 1, 1998, the GWDS was recodified at Ind. Code Ann. § 34-23-1-1 (West, Westlaw current through June 29, 2013, excluding P.L. 205-2013).  The relevant language of the

supervision. Matthew had begun learning the masonry trade from his father while still in high school, and after leaving high school in 1995, became his father's full-time apprentice. In December 1997, Robert Sr., who had previously been self-employed for a number of years as a journeyman mason, took a job with Wilhelm Construction Company as a mason. At that time, Matthew also began working for Wilhelm as a hod carrier.[4] Wilhelm offered a union apprenticeship program, but Matthew did not enroll. Instead, Matthew continued his informal apprenticeship with Robert Sr. while they worked together at Wilhelm.

On April 21, 1998, Robert Sr. was driving Matthew home after a day at work when they were involved in a head-on collision with a vehicle driven by then-sixteen-year-old Lisa Sledge. Matthew did not survive the accident, and Robert Sr. was seriously injured.

On October 4, 1999, the Longests filed an action against the defendants asserting four claims: Count I, the estate's wrongful death claim under the GWDS; Count II, the Longests' wrongful death claim under the CWDS; Count III, Robert Sr.'s personal injury claim; and Count IV, Maribel's loss of consortium claim.[5] On April 12, 2001, the defendants filed a motion for partial summary judgment arguing that recovery under the GWDS was limited to medical, funeral, and administration expenses and attorney fees because the Longests were not Matthew's "dependent next of kin." *Appellant's Appendix* at 21. The Longests filed a response in which they argued that they were entitled to recovery under the CWDS or,

---

GWDS did not change with its recodification and has not been subsequently amended. Accordingly, for ease of reference, we will cite the current version of the statute in this appeal.

[4] A hod carrier "works in conjunction with the masons, hauling brick, setting up the site, mixing mortar and determining the amount of brick needed for a particular job." *Appellant's Appendix* at 62.

[5] Counts III and IV were settled prior to trial and are not at issue in this appeal.

alternatively, the GWDS. The defendants replied in support of their motion for summary judgment and argued that Matthew was not a child for the purposes of the CWDS because Matthew's apprenticeship with his father did not constitute enrollment in a vocational school or program, and that Matthew's contributions to the Longest household were insufficient to create a genuine issue of material fact concerning whether his parents were dependent upon him.

The trial court heard argument and took the matter under advisement before granting partial summary judgment in favor of the defendants on September 25, 2001. In its order, the trial court concluded that the Longests were not entitled to recover under the CWDS because Matthew was not enrolled in a vocational school or program at the time of his death, and that recovery under the GWDS was limited to medical and funeral expenses by the estate because the Longests were not Matthew's dependent next of kin. The trial court granted the Longests' request to certify its partial summary judgment order for interlocutory appeal, but this court declined to accept jurisdiction.

On June 4, 2004, the Longests filed a motion asking the trial court to set aside its partial summary judgment order, which the trial court denied on July 21, 2004. Thereafter, on September 15, 2008, the Longests filed a motion asking the trial court to "certify the issue of Matthew Longest['s] legal status for Interlocutory Appeal to the Indiana Court of Appeals." *Appellant's Appendix* at 122. The trial court granted the order, but this court again declined to accept jurisdiction.

4

On May 23, 2012, a bench trial was held regarding liability and damages, at which the Longests again asked the court to reconsider its prior partial summary judgment order. On October 22, 2012, the trial court entered its final order. In the order, the trial court denied the Longests' request to set aside the partial summary judgment order, concluding that the Longests "ha[d] not shown any additional evidence to persuade the court the decision was incorrect." *Appellant's Appendix* at 132. The trial court found in favor of the Longests on the issue of liability and entered an order on damages and attorney fees. The trial court concluded that the damages recoverable were limited to funeral and burial expenses, costs and expenses of administration of the estate, and attorney fees related to the administration of the estate. The Longests now appeal.

1.

The Longests first argue that the trial court erred in granting summary judgment in favor of the defendants on the Longests' CWDS claim. When reviewing a trial court's ruling on a motion for summary judgment, this court stands in the shoes of the trial court and applies the same standards in deciding whether to affirm or reverse the ruling. *Ritchhart v. Indianapolis Pub. Sch.*, 812 N.E.2d 189 (Ind. Ct. App. 2004), *trans. denied.* Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Dreaded, Inc. v. St. Paul Guardian Ins. Co.*, 904 N.E.2d 1267 (Ind. 2009). This standard requires us to construe all factual inferences in favor of the nonmoving party, and all doubts as to the existence of an

issue of material fact must be resolved against the moving party.  *Dreaded, Inc. v. St. Paul Guardian Ins. Co.*, 904 N.E.2d 1267.

The CWDS allows a parent to maintain an action against a person whose wrongful act or omission causes the injury or death of a child.  I.C. § 34-1-1-8.  The remedies available in such an action include damages for the loss of the child's services, love, and companionship, as well as medical, burial, and administrative expenses, including attorney fees.  *Id.*  At issue in this appeal is whether Matthew was a child for the purposes of the CWDS at the time of his death.  The version of the CDWS in effect at the time of Matthew's death provided the following definition:

> (a) As used in this section, "child" means an unmarried individual without dependents who is:
> (1) less than twenty (20) years of age; or
> (2) less than twenty-three (23) years of age and is enrolled in an institution of higher education or in a vocational school or program.

*Id.*  This court has noted that the statutes creating actions for wrongful death are in derogation of common law, and must therefore be strictly construed.  *Deaconess Hosp., Inc. v. Gruber*, 791 N.E.2d 841 (Ind. Ct. App. 2003).  Nevertheless, this court has been willing to interpret the language of the CWDS pertaining to enrollment in an institution of higher education or a vocational school or program "as liberally as it can and still remain within the clear meaning of the statute."  *Ledbetter v. Ball Memorial Hosp.*, 724 N.E.2d 1113, 1118 (Ind. Ct. App. 2000) (citing *Sweet v. Art Pape Transfer, Inc.*, 721 N.E.2d 311 (Ind. Ct. App. 1999), *trans. dismissed*), *trans. denied*.

6

The trial court granted summary judgment against the Longests based on its conclusion that Matthew was not enrolled in an institution of higher education or a vocational school or program at the time of his death. On appeal, the Longests argue that Matthew's informal apprenticeship under his father's supervision constituted enrollment in a vocational program. In support of this contention, the Longests direct our attention to the designated affidavits of Robert Sr. and Edward Bickel, a former field representative for the local unit of the International Union of Bricklayers & Allied Craftworkers. In these affidavits, both Bickel and Robert Sr. attested that in order to become a mason, a person must complete an apprenticeship with a person or persons who practice the trade. They testified further that there are two types of apprenticeships. First, there are "[l]ess formalized (and usually non-union) apprenticeship programs consisting exclusively of extensive-on-the-job training by a skilled mason." *Appellant's Appendix* at 61, 79. Both Robert Sr. and Bickel attested that there is no formal enrollment for this type of apprenticeship. Second, there are "[f]ormalized apprenticeship programs organized by the union, which include classroom instruction in addition to on the job training." *Id.* at 61, 79. According to Bickel and Robert Sr., "[a] person who completes either type of apprenticeship program and attains a high degree of skill earns the title 'journeyman mason.'" *Id.* at 62, 80. Both Bickel and Robert Sr. attested that "[t]he International Union of Bricklayers & Allied Craftworkers recognizes both types of training programs and will certify a person who completes a 'non-union' apprenticeship as a union mason if the requisite skill of workmanship is shown." *Id.* at 62, 80. Additionally, Robert Sr. stated that he had become a union-certified mason through an informal, on-the job

7

apprenticeship, and that his oldest son, Robert Jr., became a union-certified mason by completing a similar, informal apprenticeship under Robert Sr.'s supervision.

Robert Sr. attested further that from 1995 until 1997, he was self-employed as a mason and Matthew worked full-time for him as his apprentice. Robert Sr. and Matthew both took jobs at Wilhelm in December 1997—Robert Sr. as a mason and Matthew as a hod carrier. Although Matthew did not enroll in Wilhelm's union apprenticeship program, his informal apprenticeship was ongoing at the time of his death. The Longests argue that this informal, non-union apprenticeship was sufficient at least to create a genuine issue of material fact concerning whether Matthew was enrolled in a vocational school or program at the time of his death. In arguing that Matthew was not enrolled in such a program, the defendants note that Matthew "was not taking any classes"; they note further that Matthew had not enrolled in Wilhelm's apprenticeship program, which "would have involved classroom instruction, extensive record keeping, and enrollment in addition to on-the-job training." *Appellee's Brief* at 7, 8. The defendants argue further that "[w]hat the Longests' [sic] described as 'an informal apprenticeship program' was not a 'program' at all. The most that the Longests were able to show was that Matthew Longest was considering entering an apprenticeship at some point in the future." *Id.* at 10.

In sum, the defendants argue that some degree of formality and classroom instruction is required for a course of training to qualify as a vocational program for the purposes of the CWDS. The Longests disagree and direct our attention to *Sweet v. Art Pape Transfer, Inc.*, 721 N.E.2d 311, which we find illuminating on this point. In that case, Sweet filed a CWDS

claim following the death of her twenty-one-year-old daughter, Shawnee. Shawnee had been employed at the Trinity School of Natural Health, a non-profit Christian institution that was not accredited through or financially supported by the state or federal government. Trinity offered self-study programs in natural health, the successful completion of which would result in titles such as "Master Herbalist, Doctor of Naturopathy, and Master of Holistic Health." *Sweet v. Art Pape Transfer, Inc.*, 721 N.E.2d at 312. Students in the programs answered a set of questions at the end of each section of their texts and sent their answers to Trinity to be graded, without any imposed deadlines. As an employee of Trinity, Shawnee was entitled to pursue the courses offered there free of charge and without filling out an enrollment application. Although Trinity's records did not reflect that Shawnee was enrolled as a student at the time of her death, she had received permission from the registrar to pursue the Master Herbalist course, obtained textbooks, and begun studying. *Sweet v. Art Pape Transfer, Inc.*, 721 N.E.2d 311.

The trial court granted summary judgment for the defendants on Sweet's CWDS claim based on its conclusion that Shawnee was not a child for the purposes of the CWDS because she was not enrolled in a vocational school or program at the time of her death. This court reversed. In addressing Sweet's arguments on appeal, the court separately analyzed the questions of whether Shawnee was "enrolled" and whether Trinity was a "vocational school or program." In concluding that Shawnee was "enrolled" for the purposes of the CWDS, the court rejected the defendants' contention that enrollment required the making of a written record. *Id.* In doing so, the court noted that as an employee of Trinity, Shawnee was not

9

required to fill out an application form before commencing her studies, and that there would have been no need for her to complete a financial agreement because the programs were free of charge to her. Consequently, the court "decline[d] to impose upon this wrongful death litigant a requirement of a written enrollment record where the statute includes no such requirement and where the victim's status as an employee-student would render a written enrollment record superfluous." *Id.* at 314.

Next, the court addressed whether Trinity could be classified as a "vocational school or program." Sweet argued that the self-study programs offered by Trinity were vocational because they prepared students "to advise clients about natural health in jobs with chiropractors and medical doctors, in health food stores, and with distributors of nutritional supplements." *Id.* This court agreed that the self-study programs were vocational for the purposes of the statute, relying in part on the language of a now-repealed statutory provision relating to public and private education, which broadly defined "vocational education" to include "any education the major purpose of which is to prepare a person for profitable employment." *Sweet v. Art Pape Transfer, Inc.*, 721 N.E.2d at 314 (quoting Ind. Code Ann. § 20-10.1-1-11(a) (repealed by P.L. 1-2005, § 240)).

Although *Sweet* is factually distinguishable from the case as hand, we find its reasoning helpful here. We agree with that court's conclusion that "enrollment" does not necessarily require any written record, particularly where the circumstances indicate such records would be unnecessary or superfluous. Here, both Bickel and Robert Sr. attested that there is no formal enrollment process for non-union, on-the-job apprenticeships like the one

10

in which Matthew was participating. We decline to impose such a rigid requirement in this case, particularly in light of the fact that Matthew was learning the trade under the supervision of his own father. Rather, we conclude that in this context, to be "enrolled" in a vocational program means no more than to be actively participating in such a program. Robert Sr. testified that Matthew was continuously participating in the apprenticeship at the time of his death. Thus, provided that the non-union apprenticeship qualifies as a vocational program, we have little difficulty concluding that Matthew was "enrolled" for the purposes of the CWDS.

Turning now to the question of whether the apprenticeship qualifies as a "vocational school or program," we agree with the *Sweet* court that the phrase encompasses "any education the major purpose of which is to prepare a person for profitable employment." *Id* (citation omitted). Unlike the defendants, we see no reason to impose a requirement that these educational programs contain a component of traditional classroom instruction. The courses at issue in *Sweet* were self-study courses that required students to obtain textbooks, study them, and complete a module of questions at the end of each chapter. Contrary to the defendants' assertion on appeal, there is no indication that the self-study courses at issue in that case included classroom instruction.

Moreover, we believe the legislature's decision to delay the age of majority for the purposes of the CWDS from age twenty until age twenty-three where the decedent is enrolled in an "institution of higher education or in a vocational school or program" reflects its intention to allow recovery when a decedent was in active pursuit of any of a broad range of

11

educational goals—ranging from college degrees to trade designations and other, less traditional certifications like those at issue in *Sweet*. We believe that disallowing coverage based solely on a program's informality and focus on real-world, on-the-job training as opposed to classroom learning would ignore the practical realities of many courses of vocational study and exclude those in pursuit of a number of traditional trade designations from the operation of the CWDS. In light of the statute's broad language and express inclusion of vocational programs, we do not believe this to have been the legislature's intent.

None of this is to suggest, however, that merely adding an element of on-the-job training will transform what would otherwise be nothing more than a job into a vocational program. Here, Matthew was simultaneously working as hod carrier and pursuing his informal apprenticeship under his father's supervision. Provided Matthew successfully completed the apprenticeship and demonstrated the requisite skill, he would have attained the title of journeyman mason and been eligible for union certification. As Robert Sr. attested, "[w]hether working for me or for Wilhelm, and whether in the union's formal apprentice program or through the less formal, but equally accepted on-the-job training, Matthew was working toward the completion of his apprenticeship and becoming a mason." *Appellant's Appendix* at 63. Based on these facts, we conclude that the evidence most favorable to the Longests as the non-moving parties is sufficient to create a genuine issue of material fact as to whether the informal, non-union apprenticeship was a vocational program for the purposes of the CWDS.

12

We therefore conclude that there are genuine issues of material fact precluding summary judgment in favor of the defendants on the issue of Matthew's status as a child for the purposes of the CWDS.[6]  Consequently, the trial court erred in granting summary judgment on the Longests' CWDS claim, and we remand with instructions to vacate that portion of its judgment and for further proceedings consistent with this opinion.

2.

Next, the Longests argue that the trial court abused its discretion in granting partial summary judgment on the issue of whether the Longests were Matthew's dependent next of kin for the purposes of the GWDS.  The GWDS provides, in pertinent part:

> When the death of one is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action therefor against the latter . . . and the damages shall be in such an amount as may be determined by the court or jury, including, but not limited to, reasonable medical, hospital, funeral and burial expenses, and lost earnings of such deceased person resulting from said wrongful act or omission. That part of the damages which is recovered for reasonable medical, hospital, funeral and burial expense shall inure to the exclusive benefit of the decedent's estate for the payment thereof. The remainder of the damages, if any, shall, subject to the provisions of this article, inure to the exclusive benefit of the widow or widower, as the case may be, and to the dependent children, if any, or dependent next of kin, to be distributed in the same manner as the personal property of the deceased. . . . *[W]hen such decedent leaves no such widow, widower, or dependent children, or dependent next of kin, surviving him or her, the measure of damages to be recovered shall be the total of the necessary and reasonable value of such hospitalization or hospital service, medical and surgical services, such funeral expenses, and such costs and expenses of administration, including attorney fees.*

---

[6] Because we reverse on the basis of the statutory language alone, we need not address the Longests' argument that a contrary construction of the statute would violate article 1, section 23 of the Indiana constitution.

I.C. § 34-23-1-1 (emphasis supplied). It is undisputed that Matthew left no widow or dependent children. Thus, in order for the Longests to recover under the GWDS, they must establish that they were Matthew's "dependent next of kin."[7] Concluding that the Longests were not Matthew's dependents, the trial court granted summary judgment for the defendants on this issue.

On appeal, the Longests argue that the designated evidence establishes that they were Matthew's dependents. In the context of wrongful death actions, our Supreme Court has held that "proof of dependency must show a need or necessity of support on the part of the person alleged to be dependent . . . coupled with the contribution to such support by the deceased." *New York Cent. R.R. Co. v. Johnson*, 234 Ind. 457, 465, 127 N.E.2d 603, 607 (1955). This court has noted:

> Dependency is based on a condition and not a promise, and such dependency must be actual, amounting to a necessitous want on the part of the beneficiary and a recognition of that necessity on the part of decedent, an actual dependence coupled with a reasonable expectation of support or with some reasonable claim to support from decedent. The mere fact that deceased occasionally contributed to the support of the beneficiary in an irregular way, is not sufficient to support the action....

*Deaconess Hosp., Inc. v. Gruber*, 791 N.E.2d at 845 (quoting *Wolf v. Boren*, 685 N.E.2d 86, 88 (Ind. Ct. App. 1997) (ellipsis in original)).

---

[7] We note that the Longests may not receive compensation under both the GWDS and the CWDS. *See City of Indianapolis v. Taylor*, 707 N.E.2d 1047 (Ind. Ct. App. 1999) (noting that recovery by parents under both statutes is impermissible because under the CWDS, a parent may recover only if the deceased has no dependents, and under the GWDS, a parent may recover only if he or she is a dependent of the deceased). This does not, however, prevent the Longests from pleading both claims in the alternative. *See Alaska Seaboard Partners, LP v. Hood*, 949 N.E.2d 1247, 1254 (Ind. Ct. App. 2011) (noting that "a party may properly plead alternative and contradictory theories").

14

The designated evidence establishes that at the time of his death, Matthew was living in his parents' home. Both of his parents were able-bodied and gainfully employed, and they admit that they were not totally dependent upon him. Nevertheless, they argue that they were partially dependent on Matthew because Matthew paid his mother between fifty and one hundred dollars per week for rent, food, laundry, and to offset the expenses of him living there. In her deposition, Maribel testified that Matthew's financial contributions totaled five to six thousand dollars per year.

We acknowledge that total dependency is not required under the GWDS; indeed, this court has held that a "plaintiff may be partially dependent even though he could survive without the contribution made by the deceased." *Id.* at 846 (quoting *Lustick v. Hall*, 403 N.E.2d 1128, 1131-32 (Ind. Ct. App. 1980)). On the other hand, our supreme court has held that "[p]ayments for board, lodging or other accomodations . . . are not sufficient to establish dependency on the part of the recipient." *New York Cent. R.R. Co. v. Johnson*, 234 Ind. at 465, 127 N.E.2d at 607. Both Robert Sr. and Maribel acknowledged that the funds Maribel received from Matthew were in the nature of payments for room, board, and laundry services. Indeed, Maribel stated that she "charged" him between fifty and one hundred dollars per month as a rent payment and in order to offset the expenses of him living in the home. *Transcript* at 77. Accordingly, these payments are insufficient to create a genuine issue of material fact with respect to dependency for the purposes of the GWDS.

The Longests also point out that Matthew performed services for his mother. Specifically, Maribel testified in a deposition that "in the winter he'd bring wood down. He

done things to my car. He'd run errands for me. He was a tall young man so, you know, he done a lot of things that I couldn't do, reaching, just . . . Yes, I depended on him a lot." *Appellant's Appendix* at 73.

Services may be sufficient to establish dependency, but the contributions must be more than just a service or benefit to which the claimed dependent has become accustomed, and they "must go beyond merely helping other family members, even those who have relied on that assistance." *Deaconess Hosp., Inc. v. Gruber*, 791 N.E.2d at 846 (quoting *Estate of Sears ex rel. Sears v. Griffin*, 771 N.E.2d 1136, 1139 (Ind. 2002)).

We find this court's decision in *Chamberlain v. Parks*, 692 N.E.2d 1380 (Ind. Ct. App. 1998), *trans. denied*, instructive here. In that case, the decedent's parents sought recovery under the GWDS as dependent next of kin based on the personal services their son had provided them during his lifetime. The decedent's mother stated that she depended on the decedent for a variety of services, including carrying groceries and laundry, household cleaning and maintenance, yard work, working on cars, cooking, and running errands. The trial court granted summary judgment for the defendants on the issue of dependency, and this court affirmed, reasoning that the decedent's acts "amounted to no more than gifts, donations and acts of generosity expected of a son to whom free housing, most of his board, gasoline money and automobile insurance was provided." *Id.*

We reach a similar conclusion here. We acknowledge that Matthew regularly helped out around the house, and Maribel had undoubtedly come to expect and rely to some extent upon that help. But as our Supreme Court has noted, "[s]ervices must go beyond merely

16

helping other family members, even those who have relied on that assistance." *Estate of Sears ex rel. Sears v. Griffin*, 771 N.E.2d at 1139. We therefore conclude that Matthew's actions amounted to no more than the sort of gifts, acts of generosity, and kindness to be expected of a son still living under his parents' roof. More is required to establish dependency for the purposes of the GWDS. Accordingly, we cannot conclude that the trial court erred in granting partial summary judgment in favor of the defendants on the Longests' GWDS claim, and we affirm that portion of the judgment.

3.

Finally, the Longests argue that the trial court abused its discretion in limiting their recovery of attorney fees. We review a trial court's award of attorney fees for an abuse of discretion; thus, we will reverse only when an award is clearly against the logic and effect of the facts and circumstances before the court. *Benaugh v. Garner*, 876 N.E.2d 344 (Ind. Ct. App. 2007), *trans. denied*. Under the GWDS, the Estate may recover "for the necessary and reasonable costs and expenses of administering the estate and prosecuting or compromising the action, including a *reasonable* attorney's fee[.]" I.C. § 34-23-1-1 (emphasis supplied).[8] "What constitutes reasonable attorney fees is a matter largely within the trial court's discretion." *Franklin College v. Turner*, 844 N.E.2d 99, 105 (Ind. Ct. App. 2006). In determining whether a fee is reasonable, the trial court may consider such factors as the time, labor, and skill required to perform the legal service, the amount involved and the results

---

[8] Because the issue is not before us in this appeal, we do not address whether the Longests may recover attorney fees related to their pursuit of the CWDS claim should they prevail on the merits of that claim on remand. *See* I.C. § 34-1-1-8 (providing that plaintiffs in a CWDS claim may recover damages to pay the expenses "of the administration of the child's estate, including reasonable attorney's fees").

17

obtained, the experience, reputation, and ability of the lawyer, and the fee customarily charged in the locality for similar legal services. *Nunn Law Office v. Rosenthal*, 905 N.E.2d 513 (Ind. Ct. App. 2009). Finally, "[t]he trial judge is considered to be an expert on the question and may judicially know what constitutes a reasonable attorney's fee." *Rand v. City of Gary*, 834 N.E.2d 721, 723 (Ind. Ct. App. 2005) (citing *Glover v. Torrence*, 723 N.E.2d 924, 938 (Ind. Ct. App. 2000)), *trans. denied*.

As an initial matter, we note that the issue of attorney fees was not addressed during the bench trial in this matter; instead, the parties agreed to file post-trial submissions on the issue. From our review of the chronological case summary and the trial court's final order, it appears that the Longests filed a verified petition for attorney fees and an attorney fee affidavit on June 29, 2012, and the defendants filed a response in opposition on July 20, 2012, which was also accompanied by an affidavit. The Longests, however, have not favored us with copies of any of these documents. "It is an appellant's duty to provide an adequate record for review." *Page v. Page*, 849 N.E.2d 769, 771 (Ind. Ct. App. 2006). Because the Longests have not presented us with a complete record, we are unable to review the evidence presented to the trial court on this matter. Instead, we must rely exclusively on the findings the trial court made in ruling on the Longests' request for attorney fees.

The trial court entered the following relevant findings and conclusions with respect to its attorney fee award:

> The value of the attorney's fees must be reasonable. *Hillebrand v. Supervised Estate of Large*, 914 N.E.2d 846, 850 (Ind. Ct. App. 2009). The court in *Hillebrand* held that "the damages awarded in a wrongful death action may include the reasonable attorney fees necessary to pursue the action, and

18

these damages inure to the exclusive benefit of the estate for the payment of such costs." *Id.* I.C. 29-1-10-13 states that "an attorney performing services for the estate at the instance of the personal representative shall have such compensation therefore out of the estate as the court shall deem just and reasonable."

The plaintiff's [sic] should only be able to recover for the attorney's fees associated with Count One of the complaint. It does not appear from the interpretation of the statute that the plaintiffs should be able to recover for attorney's fees for Counts Two, Three and Four, as they were not related to the administration of the estate. Further, the defendant was awarded summary judgment with respect to Count Two, which was a claim by the parents of Matthew Longest for the loss of love and companionship, services, and affection of their son under the [CWDS].

The [attorney for the] plaintiff[s] also asks that the court set the rate of her services at $350 per hour. This would be appropriate if the accident and all subsequent hearings occurred in Indianapolis or the surrounding area. However, the accident and all subsequent hearings occurred in Southern Indiana. An affidavit submitted by the defense states the prevailing rates in this area range from $125-150/hour. A "'reasonable hourly rate' is based upon market rates in the community for similar services rendered." *Barker v. City of West Lafayette*, 878 N.E.2d 230, 233 (Ind. Ct. App. 2007).

## CONCLUSION AND ORDER

. . . The plaintiffs are . . . entitled to receive reasonable attorney's fees for fees that are associated with the Estate of Matthew Longest. Indiana's [GWDS] doesn't provide for the recovery of attorney's fees for the claims of Robert and Maribel Longest. Robert Longest settled his claim in December of 2004 and his claim for negligent infliction of emotional distress disappeared with that settlement. Because we are dealing with only one of the four claims, years of records and litigation expenses, and because all of the times and expenses are lumped together in the attorney fee affidavit and expense sheets, the records are not clear as to which expenses and hours go to the funeral and burial expenses alone. The court now determines that to ask the Plaintiffs['] counsel to spend even more time sorting through documents and record's [sic] to submit specific affidavits as to the funeral and burial hours would delay this case, from 1998, even further. Therefore, in that there were four original claims and we are now dealing with one, the court finds that the equitable solution is to award attorney fees for one fourth of the request at the prevailing Lawrence County attorney fee rate of $150 per hour for a total fee award of **$11,356.50** (75.71 hours x $150) plus one forth [sic] of the expenses requested **$3,620.60** ($14,480.25 divided by 4).

*Appellant's Appendix* at 134-35.

On appeal, the Longests argue that the trial court erred in awarding attorney fees for only one-quarter of the billed hours based on its conclusion that attorney fees were recoverable for only one of the four claims asserted in the Longests' complaint.[9] Specifically, they argue that "[u]ltimately, the attorneys for the Longests and the Estates had to prove a full case of liability and damages in order to recover any amount, even those amounts for funeral expenses and Estate administration." *Appellant's Brief* at 19. The Longests assert that because it was "impossible for the attorneys or the trial court to subdivide the attorneys' time devoted to this action," they are entitled to recover fees for all of the attorney hours spent in pursuit of this case. *Id.*

On the record before us, we cannot agree. The record, such as it is, contains no support for the Longests' arguments in this regard. In fact, the record contains no evidence at all concerning the hours the Longests' attorneys spent in pursuit of this litigation, or the manner in which they spent them. Indeed, we are unable to even determine whether the Longests' position on appeal with respect to the purported indivisibility of the time spent on this matter is consistent with its position at trial. In light of our standard of review, we decline to simply take the Longests' statements on this issue at face value. Given the dearth of evidence, we cannot conclude that the trial court abused its discretion in this regard. *See*

---

[9] According to the Longests, "[t]he Estate presented alternative theories of recovery in the three mentioned counts," apparently referring to the three counts on which the trial court ruled were not eligible for an attorney fee award—the CWDS claim, Robert Sr.'s personal injury claim, and Maribel's loss of consortium claim. *Appellant's Brief* at 19. We note that none of these three claims were presented by the estate. The Longests, not the estate, were the plaintiffs in the CWDS action. *See* I.C. § 34-1-1-8 (b) (providing that a CWDS claim may be maintained by a parent or guardian). Likewise, Robert Sr. was the plaintiff in his personal injury action and Maribel was the plaintiff in her loss of consortium action. The only cause of action advanced by the estate

20

*Stewart v. TT Commercial One, LLC*, 911 N.E.2d 51, 59 (Ind. Ct. App. 2009) (noting that "[w]here the amount of the fee is not inconsequential, there must be objective evidence of the nature of the legal services and the reasonableness of the fee"), *trans. denied*.

The Longests also assert that the trial court abused its discretion in reducing the billed rate of $350 per hour to an award of $150 per hour.[10] According to the Longests, "[t]he trial court never once reviewed whether the amount of hours or the value of the hours were reasonable, but, instead, substituted the attorney's regular billable rate for a Lawrence county attorney fee." *Appellant's Brief* at 19. We disagree with this characterization of the trial court's order. The trial court clearly considered the reasonableness of the $350/hour billable rate. Specifically, based on an affidavit submitted by the defendants concerning the customary rates in Lawrence County, the trial court concluded that the billable rate was unreasonable for the relevant market and substituted a typical Lawrence County rate. Again, in light of the absence from the record of the relevant evidence concerning attorney fees, we cannot conclude that the trial court abused its discretion in this regard. We therefore affirm that part of the trial court's judgment awarding attorney fees on the GWDS claim.

Judgment affirmed in part, reversed in part, and remanded with instructions.

was the GWDS claim. *See* I.C. § 34-23-1-1 (providing GWDS claims may be commenced by the personal representative of the estate).

[10] The Longests also argue that the trial court abused its discretion by failing to use "the lodestar method" to determine a reasonable attorney fee. *Appellant's Brief* at 19. The Longests quote *Barker v. City of W. Lafayette*, 878 N.E.2d 230, 233 (Ind. Ct. App. 2007), for the proposition that "[t]he lodestar figure is the product of a reasonable number of hours spent on the litigation times a reasonable hourly rate." Assuming *arguendo* that the trial court was required to employ this method, our review of the trial court's order indicates that it did just that. The court determined a reasonable number of hours spent on the claims for which attorney fees were available (75.71 hours) and multiplied that by a reasonable hourly rate ($150 per hour), for a total award of $11,356.50.

21

ROBB, C.J., and CRONE, J., concur.