## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**
Sep 30 2015, 9:51 am
**CLERK**
of the supreme court,
court of appeals and
tax court

| ATTORNEYS FOR APPELLANTS | ATTORNEY FOR APPELLEES |
|---|---|
| Mary Beth Ramey<br>Ramey & Hailey<br>Indianapolis, Indiana | William H. Kelley<br>Kelley & Belcher<br>Bloomington, Indiana |
| Nicholas F. Baker<br>The Hastings Law Firm<br>Indianapolis, Indiana | |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Matthew Longest, Deceased, by Robert Longest, Administrator of the Estate and Parent of Matthew Longest, and Robert Longest, Jr., Administrator of the Estate of Maribel Longest, Deceased and Parent of Matthew Longest,<br><br>*Appellants-Plaintiffs,* | September 30, 2015<br><br>Court of Appeals Cause No. 47A01-1501-CT-35<br><br>Appeal from the Lawrence Circuit Court<br><br>The Honorable Lori Thatcher Quillen, Special Judge<br><br>Trial Court Cause No. 47C01-9910-CT-894 |

v.

Lisa M. Sledge, a minor and
Roger Brown and Donna Sledge,
a/k/a Donna Sledge Brown,

*Appellees-Defendants.*

**Barnes, Judge.**

# Case Summary

Robert Longest, Sr., as the administrator of the Estate of Matthew Longest, and Robert Longest, Jr., as the administrator of the Estate of Maribel Longest, (collectively "the Longests") appeal the trial court's judgment in favor of Lisa Sledge, Robert Brown, and Donna Sledge Brown (collectively "the Appellees"). We reverse.

# Issue

The Longests raises two issues. We address the dispositive issue, which is whether the trial court properly determined that the Child Wrongful Death Statute ("CWDS") did not apply to the Longests' cause of action.

## Facts

In 1998, Matthew was twenty, living with his parents, Robert, Sr., and Maribel,[1] and working as a hod carrier, for his father, a journeyman mason. Hod carriers "mix mud, set up walls, start materials ahead of the mason, [and] keep them supplied with mortar . . . ." Tr. p. 89. Matthew was learning the trade as his father's apprentice. Through this "on-the-job training," Matthew could eventually take a qualification test to become a journeyman mason. Tr. p. 57. Alternatively, the union offers an apprenticeship program, which is a four-year program, with monthly progress reports and a classroom component. Both paths can lead to an individual becoming a journeyman mason.

On April 21, 1998, Robert, Sr., was driving, and Matthew was a passenger when they were involved in a head-on collision with a vehicle driven by sixteen-year-old Lisa Sledge. Matthew was killed in the accident, and Robert, Sr., was seriously injured.

In 1999, the Longests filed a lawsuit, which included a wrongful death claim, against the Appellees. In 2001, the trial court granted partial summary judgment in favor of the Appellees on the basis that the Longests was not entitled to recover under the CWDS because Matthew was not enrolled in a vocational school or program at the time of his death. In 2012, a bench trial were held regarding liability and damages, during which the Longests asked the

---

[1] During the course of litigation, Maribel passed away.

trial court to reconsider its prior summary judgment order. The trial court rejected this request but found in favor of the Longests on the issue of liability. The Longests appealed the grant of summary judgment in favor of the Appellees on the CWDS claim.

[6] On appeal, the Longests argued that Matthew's informal, non-union apprenticeship was sufficient to create a genuine issue of material fact concerning whether he was enrolled in a vocational school or program at the time of his death as required by the CWDS. We concluded, "provided that the non-union apprenticeship qualifies as a vocational program, we have little difficulty concluding that Matthew was 'enrolled' for the purposes of the CWDS." *Longest v. Sledge*, 992 N.E.2d 221, 227 (Ind. Ct. App. 2013), *trans. denied*.

[7] On remand, findings and conclusions were requested and, following the trial, the trial court found in part:

> At the time of this tragic accident Matthew was not "enrolled" in a "vocational school or program". Only two witnesses testified at trial about Matthew's employment and on the job training, (Robert Longest Senior and Robert Longest Junior). It is undisputed that at the time of the accident Matthew was employed as a hod carrier with strictly on the job training and there was no classroom work, no completion of any application forms and no creation of any documentation for any enrollment in any program and no record for any actual program. In fact, the only items contained in Matthew's personnel or employment file were the standard bookkeeping payroll documentation for tax withholdings, hours and wages as would be the case of any employee. There were no application forms, no self-study

programs, no record keeping, no requirement to study textbooks, no requirement to complete a module of questions, no study of materials, no classroom activity, no classroom instructions, no curriculum, nothing to sign and no grades or graduation certificates.

App. pp. 295-96. The trial court concluded that the Longests "have not met their burden of proving that Matthew was enrolled in an institution of higher education or in a vocational school or program at the time of the accident." *Id.* at 296. The Longests now appeal.

## Analysis

In reviewing findings and conclusions issued pursuant to Indiana Trial Rule 52(A), we apply a two-tiered review, and affirm if the evidence supports the findings and the findings support the judgment. *Wysocki v. Johnson*, 18 N.E.3d 600, 603-04 (Ind. 2014). We may not set aside findings or a judgment unless they are clearly erroneous, and we must give due regard to the trial court's opportunity to judge witness credibility. *Id.* (citing Ind. T.R. 52(A)). Findings are clearly erroneous only when they have no factual support in the record, and judgment is clearly erroneous if it applies the wrong legal standard to properly found facts. *Id.* at 603-604.

The relevant version of the CWDS defines "child" as "an unmarried individual without dependents who is: (1) less than twenty (20) years of age; or (2) less than twenty-three (23) years of age and is enrolled in an institution of higher

education or in a vocational school or program."  Ind. Code 34-1-1-8(a) (1997).[2]

In the Longests' first appeal, we concluded:

> "enrollment" does not necessarily require any written record,
> particularly where the circumstances indicate such records would
> be unnecessary or superfluous.  Here, . . . Robert Sr. attested that
> there is no formal enrollment process for non-union, on-the-job
> apprenticeships like the one in which Matthew was participating.
> We decline to impose such a rigid requirement in this case,
> particularly in light of the fact that Matthew was learning the
> trade under the supervision of his own father.  Rather, we
> conclude that in this context, to be "enrolled" in a vocational
> program means no more than to be actively participating in such
> a program.  Robert Sr. testified that Matthew was continuously
> participating in the apprenticeship at the time of his death.  Thus,
> provided that the non-union apprenticeship qualifies as a
> vocational program, we have little difficulty concluding that
> Matthew was "enrolled" for the purposes of the CWDS.

*Longest*, 992 N.E.2d at 227.

[11]  The law of the case doctrine mandates that an appellate court's determination
of a legal issue binds the trial court and ordinarily restricts the court on appeal
in any subsequent appeal involving the same case and relevantly similar facts.
*Hopkins v. State*, 782 N.E.2d 988, 990 (Ind. 2003).  Although a court has the

---

[2]  In 1998, the CWDS was recodified as Indiana Code Section 34-23-2-1, effective July 1, 1998.  The statute
now defines a "child" as "an unmarried individual without dependents who is: (1) less than twenty (20) years
of age; or (2) less than twenty-three (23) years of age and is enrolled in a postsecondary educational
institution or a career and technical education school or program that is not a postsecondary educational
program."  There is no dispute regarding the application of the prior version of the CWDS.

power to revisit prior decisions of its own or of a coordinate court in any circumstance, courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was "clearly erroneous and would work manifest injustice." *Id.* (quotation omitted). Because we decided the issue of Matthew's enrollment as a matter of law in the Longests' first appeal, the issue of enrollment was not available for reconsideration by the trial court and, in the absence of a compelling reason, we will not reconsider this conclusion. Thus, the trial court's finding on remand that there was no application forms or documentation of enrollment is not relevant because the issue of enrollment was resolved in the first appeal.

[12] The only issue properly before the trial court was whether Matthew's apprenticeship was a vocational school or program under the CWDS. On this issue, we observed in the Longests' first appeal:

> Moreover, we believe the legislature's decision to delay the age of majority for the purposes of the CWDS from age twenty until age twenty-three where the decedent is enrolled in an "institution of higher education or in a vocational school or program" reflects its intention to allow recovery when a decedent was in active pursuit of any of a broad range of educational goals—ranging from college degrees to trade designations and other, less traditional certifications like those at issue in *Sweet* [*v. Art Pape Transfer, Inc.*, 721 N.E.2d at 311 (Ind. Ct. App. 1999)]. We believe that disallowing coverage based solely on a program's informality and focus on real-world, on-the-job training as opposed to classroom learning would ignore the practical realities of many courses of vocational study and exclude those in pursuit of a number of traditional trade designations from the operation of the CWDS. In light of the statute's broad language and

express inclusion of vocational programs, we do not believe this to have been the legislature's intent.

None of this is to suggest, however, that merely adding an element of on-the-job training will transform what would otherwise be nothing more than a job into a vocational program. Here, Matthew was simultaneously working as hod carrier and pursuing his informal apprenticeship under his father's supervision. Provided Matthew successfully completed the apprenticeship and demonstrated the requisite skill, he would have attained the title of journeyman mason and been eligible for union certification. As Robert Sr. attested, "[w]hether working for me or for Wilhelm, and whether in the union's formal apprentice program or through the less formal, but equally accepted on-the-job training, Matthew was working toward the completion of his apprenticeship and becoming a mason." *Appellant's Appendix* at 63. Based on these facts, we conclude that the evidence most favorable to the Longests as the non-moving parties is sufficient to create a genuine issue of material fact as to whether the informal, non-union apprenticeship was a vocational program for the purposes of the CWDS.

*Longest*, 992 N.E.2d at 228 (second alteration in original).

[13] At the trial on remand, Robert, Jr., and Robert, Sr., testified about the apprenticeship path to becoming a journeyman mason and the on-the-job training that it involves. They testified that the union recognizes apprenticeships and the union program as the two paths to becoming a journeyman. Robert, Jr., described the apprenticeship as "working under other journeyman to learn how to do the trade. . . . There's a period of time to where you're going from starting to a process of learning how to become a skilled craftsman in a trade-in whatever trade it is." Tr. p. 21. He also testified that

becoming a journeyman mason increased one's pay by 60%-75%. Robert, Sr., described the steps of progression in learning the trade as beginning as a hod carrier and then learning to use a trowel. He also explained that a dexterity test was required to obtain a journeyman card. He testified that Matthew was in the phase of learning how to use the tools.

[14] It is true, as the trial court found, that the apprenticeship program in which Matthew was participating did not include any specific record keeping, textbook or other study materials, classroom component, or grades. However, the undisputed evidence showed that there are two paths to becoming a journeyman mason, that Matthew was participating in one of the paths, and that after his apprenticeship he could eventually complete the necessary testing to become a journeyman mason. Given the narrow issue before the trial court, we conclude that the trial court erred in determining that the Longests had "not met their burden of proving that Matthew was enrolled in an institution of higher education or in a vocational school or program at the time of the accident." App. p. 296. The undisputed evidence showed that the informal, non-union apprenticeship was a vocational program because it could ultimately lead to Matthew obtaining his journeyman's card.

## Conclusion

[15] The trial court improperly concluded that the Longests failed to meet their burden of establishing that Matthew's apprenticeship was a vocational program under the CWDS. We reverse.

Reversed.

Najam, J., and Bradford, J., concur.